## A89A0283. SWEET v. THE STATE.
(382 SE2d 376)

BIRDSONG, Judge.

The appellant Marion Leon Sweet was convicted of arson. After an evening of extremely loud and boisterous and ungovernable behav-

ior, when he took his pregnant girl friend to the hospital after an altercation between them, he was arrested; and it was found by the jury that, as charged, he set fire to his jail cell in the night. His defense was that his cellmate set the fire. On appeal he enumerates 11 errors. *Held*:

1. We find no harmful error in the trial court's denial of Sweet's motion for preliminary hearing. The offense was committed on September 28, 1987. Sweet did not file the motion until Friday, October 16, 1987, and a grand jury scheduled to meet Monday, October 19, indicted him on October 20. The purpose of the preliminary hearing is to authorize the keeping in custody of one accused with probable cause of committing a crime until the grand jury determines whether he should stand trial. *State v. Houston*, 234 Ga. 721 (218 SE2d 13). It was appellant's own lassitude which denied him this preliminary hearing, and when he finally made his motion, one working day before the grand jury was to determine the indictment, the grand jury hearing itself then performed the function which a preliminary hearing would have served. Thus, a preliminary hearing held after indictment would be pointless. A preliminary hearing may be a handy tool for defense discovery, but it is not one he is entitled to by right for discovery purposes.

2. Sweet contends he was entitled to a grant of mistrial on grounds the State "used its peremptory challenges in a racially motivated manner and therefore, contrary to law." Certainly the deliberate or purposeful exclusion by striking of a minority from participation as jurors violates the constitution (*Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69)); but it is neither fair nor logical to say that the bald fact that all of the persons peremptorily struck by the State were black, means the strikes were racially motivated. The issues in *Batson* as to jury *challenges* ultimately signify only because of their effect on discrimination in jury *selection*. The appellant in this case is black. Since the jury that convicted him was composed of nine black persons and three white persons, and the alternate juror was black, we do not see how there can be a claim that the jury which tried appellant was racially discriminatory. Therefore, there is no reason to inquire in the manner of their choosing.

3. Appellant complains that the trial court allowed two witnesses to testify that the fire placed their lives "in imminent danger" and brought them "near death," these being, he says, the ultimate jury questions and inadmissible incompetent opinions.

We find no error. One police lieutenant was asked: "*Would you say* this fire put [the prisoners' lives] in imminent danger?" (Emphasis supplied.) See *Faucette v. State*, 71 Ga. App. 331 (30 SE2d 808). Clearly this witness was competent to testify as to "what he would say" of what he witnessed, as his opinion. OCGA § 24-9-65 provides:

"Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. If the issue shall be as to the existence of a fact, the opinions of witnesses shall be generally inadmissible." Any testimony on this question, even expert testimony, is likely to be opinion only. Ultimately, the same question to be decided by the jury is one of opinion. Thus, this witness was permitted under OCGA § 24-9-65 to give his opinion as to whether he would say lives were in imminent danger. The "existence of [this] *fact*" was not one to be proved in any other way than by the opinion of the eyewitness who observed the fire and the prisoners' conditions.

The same is true of the question posed to the cellmate: "Were you near death?" This is most likely a matter of opinion. In any case, the question was not directly answered after the objection was made but the cellmate only gave the details of his physical condition after the fire.

4. The trial court did not err in denying mistrial for the elicitation of "statements allegedly made by the Appellant, but which were not provided counsel in accord with Georgia law." The statements referred to are contained in an officers' testimony that after being jailed, appellant generally kept hollering and "talking loud, talking about he wasn't going to stay in jail and all this kind of stuff." Another officer gave similar general testimony, that appellant hollered and said he would get out of jail one way or another. Evidently there was much confusion and hollering and physical disturbance when appellant was being arrested and jailed. By all accounts, he made a great deal of noise. The officers in their general descriptions did not testify as to any particular new incriminating admission or statement that the defense had not already in identical substance been given.

Thus the witnesses were testifying generally and in substance as to the same statements that had in fact been provided to the defense. We do not find the defendant was harmfully denied any right to discovery of his own statements.

5. The trial court did not err in restricting cross-examination as to the cellmate's prior convictions. In fact, this line of questioning was not "restricted" at all; the trial court simply required the appellant to support it by certified copies of any such convictions. See *Kimbrough v. State*, 254 Ga. 504 (2) (330 SE2d 875). If appellant could not comply with this legal requirement, the fault is his. He was not *denied* any constitutional right to "delve" into the cellmate's criminal past, but was only required to do so properly.

6. Appellant contends the trial court erred in permitting a witness to testify, over objection, that appellant understood his *Miranda* rights. We find no *harmful* error. The witness testified in detail as to the appellant's actions and his responses on being read his *Miranda*

rights, none of which indicated any confusion on his part. In fact, although his companion agreed to take the intoximeter test, the appellant refused to do so. Some of the testimony given was that throughout his arrest and incarceration, appellant was acting "real wild" and "real hyper," hollering and avowing generally that he would get out of jail "one way or the other." This is not inconsistent with a reasonable conclusion that he understood his right to remain silent; it merely indicates he declined to do so.

Moreover, the situation described was not one involving questioning by police as to guilt or incrimination, but was the general circumstance of his arrest. The complained-of statements were what the appellant hollered and blurted out while acting "real wild" and "hyper." The *Miranda* issue applies to whether any incriminating statements were elicited while, or because, a defendant was not advised of or did not understand his right to remain silent. The arresting officer here was merely testifying to appellant's wild behavior; and whatever appellant chose to blurt out while evidently making no attempt to control himself, is admissible. We find that any possible error in allowing this witness to testify that the appellant understood his *Miranda* rights is not relevant to the circumstances of this case and it is highly probable, if not certain, that any error was harmless beyond a reasonable doubt. See *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133).

7. There is no factual merit to appellant's contention that "there was no evidence to establish that there was . . . physical damage to the jail structure itself." See, as to the offense of arson in the first degree, OCGA § 16-7-60. He certainly was not entitled to a directed verdict of acquittal on that basis. Mattresses and other material were burned on the floor, emitting overwhelming smoke. The evidence shows the jail was at least smoke-damaged. Ultimately, the question of what constitutes "damage" is for the jury. Certainly, the evidence with all reasonable deductions therefrom does not "demand a finding" (see OCGA § 17-9-1) that the building (structure) was not damaged, which is the only circumstance in this case which would have authorized a directed verdict of acquittal.

8. Appellant contends that because the indictment did not allege in express words arson in the first degree (OCGA § 16-7-60), he could be adjudged, convicted and sentenced for no greater offense than arson in the second degree (OCGA § 16-7-61). This argument is without merit. The indictment alleged the essential elements of arson in the first degree, viz., that he did *"knowingly damage* by means of *fire* a *building* . . . under circumstances that it was *reasonably foreseeable that human life might be endangered."* (Emphasis supplied.) The indictment went further and described those particular circumstances to be that appellant and his cellmate were locked up in the jail cell

and unable to escape when the fire was ignited. Without doubt this constituted serious endangerment of life, and the jury, under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560), could rationally determine beyond a reasonable doubt that appellant committed this act. This is arson in the first degree, and appellant was properly charged, convicted, and sentenced under the form of the indictment. See *State v. Hovers,* 148 Ga. App. 431 (251 SE2d 397).

Even if appellant had a defense to the form of the indictment for some defect, he waived it by failing to raise it prior to trial. *May v. State,* 179 Ga. App. 736 (348 SE2d 61).

9. Appellant urges that the State failed to establish the requisite criminal intent necessary to sustain a conviction. Clearly the State did prove evidence of the requisite criminal intent, and the jury as rational triers of fact were authorized to find so beyond a reasonable doubt. *Jackson v. Virginia,* supra. The entirety of the evidence shows that appellant, as he "wildly" and obstreperously avowed, intended to get out of jail "one way or another," and figured he was already in trouble anyway. If he did not specifically intend to endanger a life, he nevertheless set the fire (and damaged the structure) under circumstances that *did* endanger life, and that is all the statute requires be proved.

10. The trial court did not err in sentencing appellant to 20 years to be served consecutive to the concommitant sentence for revocation of probation. (His previous offenses included armed robbery and aggravated assault.) This does not constitute "twice punishing" the appellant for the same offense, because the probation revocation is based on the prior offenses and a violation of any condition of probation. In law, the appellant was sentenced to serve his time for the prior offenses (armed robbery and aggravated assault), and, as a separate matter, was sentenced consecutively for arson. The sentence was within the law.

11. Appellant sought to obtain a free transcript by asserting that he was an indigent. The court's remarks in denying this motion clearly indicate it found as fact the appellant was not indigent, or a pauper. Appellant contends he was entitled to a hearing on the matter by OCGA § 9-15-2 (b). This section, however, does not mandate a hearing upon the mere filing of a petition in forma pauperis. It provides that the court "may" inquire into the truth of the affidavit of indigency, and "after a hearing" (if it holds a hearing) may award costs. The court in this case evidently had the facts at its disposal to determine the matter, and found appellant not to be a pauper. The cases posed by appellant as strictly requiring an indigency hearing (*Fowler v. State,* 184 Ga. App. 177 (360 SE2d 918); *Clay v. State,* 122 Ga. App. 677 (178 SE2d 331)), do not apply.

*Judgment affirmed. Deen, P. J., concurs. Benham, J., concurs in Divisions 1, 3, 4, 5, 6, 7, 8, 9, 10, 11 and concurs in judgment only as to Division 2.*

DECIDED MAY 10, 1989.

*John M. Beauchamp & Associates, Kermit S. Dorough, Jr.*, for appellant.

*J. Brown Moseley, District Attorney, Ron S. Smith, Assistant District Attorney*, for appellee.