## A96A0438. LAZENBY v. THE STATE.
(470 SE2d 526)

SMITH, Judge.

Ricky Lazenby was indicted for kidnapping and aggravated assault. He was convicted by a jury of aggravated assault and was acquitted on the kidnapping charge. The trial court sentenced him to 20 years confinement. His amended motion for new trial was denied, and he appeals.

1. Lazenby contends the evidence was insufficient to support the verdict. He questions the sufficiency of the evidence through an attack on the victim's credibility.

Construed to support the verdict, evidence was presented that around 5:00 a.m., June 30, 1994, Cheryl Robinson was walking home from a party, where she had smoked crack cocaine and had "gotten high." Robinson testified that Lazenby began to follow her and to question her about her sister. When Robinson would not tell Lazenby where to find her sister, Lazenby shot her three times. Subsequently, as Robinson was being taken from an ambulance into the hospital, she saw an officer and Lazenby and identified Lazenby as her assailant. She also positively identified Lazenby at trial.

Although evidence was presented that Robinson had smoked crack before she was shot, she also testified, "I was in my right mind." Whether she was credible was solely for the jury to determine. See *Parker v. State*, 145 Ga. App. 205, 206 (1) (243 SE2d 580) (1978). Construing the evidence in a light most favorable to the verdict, sufficient evidence was presented from which a rational trier of fact could have found Lazenby guilty of aggravated assault under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lazenby maintains that the trial court erroneously admitted his statements made while the arresting officer was struggling with him trying to read him his rights. He argues that the statements were involuntary, were induced by fear of injury, and thus were inadmissible.

Officer A. R. Wallace testified that after receiving a description of Robinson's assailant, he located Lazenby. Wallace stated that when Lazenby saw the police car, "he took off." Wallace chased him, pulled his gun, and stated, "I'm going to kill you. Don't move. Don't move." Lazenby continued to run from Wallace but ended up against an eight-foot fence. Wallace grabbed him, wrestled him to the ground, and handcuffed him. Wallace, who weighed 280 pounds, held Lazenby on the ground with his knee in Lazenby's back. Immediately after he wrestled Lazenby to the ground, he began reading Lazenby's *Miranda* rights to him. Before he could finish reading the rights, though, Lazenby stated, "I didn't shoot nobody, man. I didn't shoot

nobody." Wallace testified that he told Lazenby, "Now, hold up, man. Let me get through with the rights." As Wallace again attempted to read the rights, Lazenby said, "It wasn't me." Wallace unequivocally testified that Lazenby continued to interrupt the reading of his rights, and he continued to tell Lazenby to "be quiet" until he could finish reading the rights. Wallace finally finished reading the card on which the rights were written and then asked Lazenby whether he wished to talk. Lazenby said, "Yeah, I'll talk. I'll talk. Wasn't me. It was Lemar." Wallace testified that the statements made before he was able to completely read the *Miranda* rights were made without threat, violence, or hope of benefit. Further, those statements were not prompted by questions from Wallace.

Lazenby's statements were not confessions of guilt; they clearly were exculpatory in nature. Moreover, the statements made before Wallace could completely read the rights were not made as a result of interrogation. Lazenby blurted out the statements before Wallace could completely read him his rights and continued to interrupt despite Wallace's instructions to wait. While Wallace weighed 280 pounds and held Lazenby on the ground with his knee, we do not agree with Lazenby that his statements were inadmissible because they were induced by fear of injury. "[W]hile interrogation includes not only express questioning but also any words or actions on the part of the police which the police should know are reasonably likely to elicit an incriminating response from the suspect, it does not include words or actions, such as here occurred, that are *normally attendant* to arrest and custody. [Cit.]" *Lebis v. State*, 212 Ga. App. 481, 482 (3) (442 SE2d 786) (1994). Wallace's wrestling Lazenby to the ground and holding him with his knee were activities attendant to the arrest. Lazenby's statements were spontaneous exclamations made at the time of arrest, not prompted by interrogation, and were admissible. Id. See also *Lolley v. State*, 259 Ga. 605, 606 (2) (385 SE2d 285) (1989); *Sweet v. State*, 191 Ga. App. 516, 518-519 (6) (382 SE2d 376) (1989).

Lazenby's statement that someone else shot Robinson, made after Wallace could finally finish reading the rights, was also admissible. Again, the statement was not a confession of guilt and was voluntary. Lazenby was eager to volunteer information, as he continued to talk both before and after his rights were read to him. We find nothing in the record indicating that Lazenby asked for a lawyer before making any statements. The evidence presented was clear that Lazenby's rights were fully read to him, and he told Wallace that he understood those rights. That Wallace opined, "I can't say that he fully understand [sic]," does not warrant reversal. Lazenby told Wallace that he understood his rights, did not ask for an attorney, and disregarded Wallace's warnings to keep quiet. The only additional in-

formation he imparted after the rights were fully read was that someone else shot Robinson. The trial court did not err in admitting Lazenby's statements.

3. Lazenby contends the trial court erroneously sentenced him as a recidivist under OCGA § 17-10-7 (b) because one of his previous convictions used as a predicate for sentencing under that statute was a conviction under the Youthful Offender Act. Relying on *Queen v. State*, 182 Ga. App. 794 (357 SE2d 150) (1987), he maintains that use of this conviction was improper.

We disagree. *Queen v. State* addresses the effect of treatment under the First Offender Act, OCGA § 42-8-60 et seq., on subsequent convictions. An individual sentenced under the First Offender Act, "[u]pon fulfillment of the terms of probation, upon release by the court prior to the termination of the period thereof, or upon release from confinement . . . shall be discharged without court adjudication of guilt. The discharge shall completely exonerate the defendant of any criminal purpose . . . and the defendant shall not be considered to have a criminal conviction." OCGA § 42-8-62 (a).

The Youthful Offender Act, OCGA § 42-7-1 et seq., contains significantly different provisions; it does not authorize the discharge of a felony conviction. While the Youthful Offender Act provides "for treatment of youthful offenders who have the potential and desire for rehabilitation," OCGA § 42-7-3 (c), it does not provide for exoneration. It impacts the sentence, but not the conviction. Although Lazenby may have been sentenced under the Youthful Offender Act, the robbery conviction from which the sentence arose remains a felony conviction for purposes of recidivist sentencing. We find no error.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED APRIL 12, 1996.

*Stacy Y. Cole*, for appellant.
*Lewis R. Slaton, District Attorney, Charles E. Rogers, Leonora Grant, Assistant District Attorneys*, for appellee.