A96A0615, A96A0616. AMERICAN GOLF CORPORATION
v. MANLEY et al.; and vice versa.
(473 SE2d 161)

POPE, Presiding Judge.

After plaintiff Jeffrey Manley was seriously injured in a golf cart accident, he and his wife Haley sued defendant American Golf Corporation, the operator of the golf course. Seeking actual and punitive damages, plaintiffs alleged that defendant was negligent in several ways. The trial court granted defendant's motion for directed verdict with respect to punitive damages, but allowed plaintiffs' claims for actual damages to go to trial. In Case No. A96A0615, defendant appeals from a jury verdict of $140,000 for Jeffrey Manley and $10,000 for his wife, and in Case No. A96A0616, plaintiffs cross-appeal from the trial court's denial of their motion for pre-judgment interest. We affirm in both cases.

*Case No. A96A0615*

Because this appeal is from a denial of a motion for a directed verdict, we view the facts in a light favorable to the jury's verdict. See *Roswell Properties v. Salle*, 208 Ga. App. 202, 203 (3) (430 SE2d 404) (1993). Plaintiff Jeffrey Manley and his brother were playing golf at defendant's course for the first time. Although the whole course was hilly, the 15th hole was particularly steep and its cart path was in one way unique: it combined the particularly steep grade with a 180 degree hairpin turn. Moreover, due to heavy foliage and another curve, the hairpin turn was not visible to a cart driver starting down the hill. As plaintiff started down the hill and began to pick up speed, he applied the brakes, but it was too late; the brakes did not slow him down, and he continued to gather speed. When plaintiff applied more and more pressure to the brakes, they apparently locked up, and the

cart crashed and tipped over at the hairpin turn.

The manager of the golf course testified that there had been prior accidents at that spot and that management knew it was dangerous. He said those accidents resulted from brakes locking up, which occurs when the driver pushes down on the brake pedal in the wrong spot or from the wrong angle, and results in skidding and loss of control. The manager further stated that management had considered putting in speed bumps to make the path on the 15th hole less dangerous, and had even thought about stationing a ranger there to lead drivers down the hill. Defendant decided to do neither, however, and although the manager did not directly say so, the jury could have inferred from his testimony that defendant did not want to spend the money because it had decided to discontinue its operation of the course after its lease ran out.

Plaintiffs presented the testimony of two of the other golfers who crashed at the same turn, though the testimony of a golf course employee who crashed at the same site was excluded because his accident was not substantially similar to plaintiff's. Additionally, plaintiffs questioned Mike Young, a golf course architect hired by defendant to consult about a different problem the year before plaintiff's accident. Young said that when he saw the 15th hole he told defendant's representative, "Someone could get killed on this cart path," and the representative responded, "Yeah, we know. We've had some problems here."

Defendant's manager testified that there were numerous warning signs on the 15th hole, cautioning drivers about the steep grade and advising them to slow down. Plaintiff testified, however, that at the time of his accident there was only one caution sign, and it was located too far down the hill to be of any help.[1] Moreover, defendant acknowledged that none of its warning signs mentioned the upcoming, unseen hairpin turn, which was what made the path on this hole so dangerous. Instead, the signs were the same kind of general cautionary signs present in other areas of the course. The manager had previously put up a sign that said "Danger," but his superiors had directed him to remove it and replace it with a milder warning.

1. In four enumerations of error, defendant argues that its motion for directed verdict should have been granted because there was no evidence of negligence. A denial of a motion for directed verdict must be affirmed if, viewed in the light most favorable to the party securing the jury verdict, there is any evidence to support the verdict. *Salle*, 208 Ga. App. at 203-204. Considering the pictures of

---

[1] Notably, pictures of the 15th hole taken just after the accident disappeared while in defendant's possession.

the path in the record, the testimony about the layout of the path and drivers' inability to see the hairpin turn when starting down the hill, the manager's testimony about his awareness of the danger, Young's testimony regarding the admission of another representative of defendant that he was aware of the danger, the testimony regarding other accidents in which drivers had crashed at the same turn after their brakes locked up, the conflicting evidence about what warning signs were in place at the time of plaintiff's accident, and undisputed evidence that there was no specific warning about the hairpin turn, we conclude there was evidence supporting a finding that defendant had superior knowledge of a dangerous condition and was negligent in failing to warn its invitees about it.

2. In light of our conclusion in Division 1, we need not consider whether there was evidence that defendant was negligent in other ways as well. See *Salle*, 208 Ga. App. at 204 (jury's finding of negligence will be upheld if there is any evidence to support it).

3. Defendant also contends the trial court erred in allowing Mike Young to testify on redirect that he had seen a lot of golf courses, and that in his opinion the golf cart path at defendant's 15th hole was a dangerous path — one of the most dangerous he had seen. Young was not offered as an expert, so his statement of opinion was not authorized by OCGA § 24-9-67. Nonetheless, the testimony was admissible under OCGA § 24-9-65, which provides that where the question under examination is one of opinion, any witness may give his opinion and its basis. Because the question of dangerousness is inherently one of opinion, the trial court properly admitted Young's opinion testimony: "the status of the witness as lay or expert would go, not to admissibility, but to credibility." *McLelland v. State*, 203 Ga. App. 93, 95 (6) (416 SE2d 340) (1992). See also *Sweet v. State*, 191 Ga. App. 516 (3) (382 SE2d 376) (1989).

4. Defendant further argues that the trial court erred in admitting evidence regarding two other accidents because they were not substantially similar to plaintiff's accident. Both the other accidents occurred at the exact same location as plaintiff's, and in both of the other accidents the drivers, like plaintiff, applied their brakes but were unable to slow down, and eventually locked their brakes, crashing and tipping over their carts. This is sufficient similarity to attract defendant's attention to the dangerous condition of the path. See *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675 (3) (278 SE2d 100) (1981). Contrary to defendant's assertion, the fact that one of the drivers jumped out of her cart as the cart began to crash does not undermine the similarity of the occurrences. Defendant's argument that the other accident was dissimilar because the driver was drinking is also unconvincing, since the driver's testimony was that he had had a couple of beers but was not intoxicated.

*Case No. A96A0616*

5. In their cross-appeal, plaintiffs challenge the trial court's denial of their motion for pre-judgment interest. Under OCGA § 51-12-14 (a), "[w]here a claimant has given written notice . . . to a person against whom a claim is made of a demand for an amount of unliquidated damages in a tort action and the person against whom such claim is made fails to pay such amount within 30 days . . ., the claimant shall be entitled to receive interest on the amount demanded if, upon trial of the case in which the claim is made, the judgment is for an amount not less than the amount demanded." Here, written notice was made of a demand for $150,000, and the jury returned a verdict of $140,000 for Jeffrey Manley and $10,000 for Haley Manley on her consortium claim. Thus, the correctness of the trial court's decision depends on whether the written notice spoke to Jeffrey's claim only, or included Haley's as well.

Plaintiffs rely on *Grissett v. Wilson*, 181 Ga. App. 727, 728 (1) (353 SE2d 621) (1987), in which we held that a single notice of demand can cover multiple claims, and that a notice stating that "[t]he purpose of this letter is to make a demand for settlement of all claims" covered the spouse's consortium claim as well as the injured plaintiff's personal injury claim. See also *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 179 (3) (438 SE2d 406) (1993) (demand letter expressly offering to settle the entire case with *all* defendants for *all* damages covered separate claim for attorney fees under OCGA § 13-6-11). In this case, however, the heading of the demand letter referenced only Jeffrey Douglas Manley, and the first paragraph stated, "Please be advised that we herewith posit a settlement demand *in reference to the above stated claim* in the amount of $150,000." (Emphasis supplied.) The letter contains a section entitled "Claims on Behalf of Jeffrey Douglas Manley," but there is no separate discussion or listing of the consortium claim. In the five-page letter, the consortium claim is mentioned only once in passing, in a section called "Accident History." Mindful that the provisions of OCGA § 51-12-14 must be strictly construed because they are in derogation of common law, see *Resnik v. Pittman*, 203 Ga. App. 835 (418 SE2d 116) (1992), our review of the full demand letter, and particularly the reference to settling Jeffrey Manley's claim rather than "all claims," leads us to conclude that the demand letter encompassed only Jeffrey's claim. Accordingly, the trial court properly denied plaintiffs' motion for pre-judgment interest.

*Judgment affirmed in Case No. A96A0615. Ruffin, J., concurs. Andrews, J., concurs specially. Judgment affirmed in Case No. A96A0616. Andrews and Ruffin, JJ., concur. Smith, J., disqualified.*

ANDREWS, Judge, concurring specially.

I concur specially in Case No. A96A0615 to observe that, generally, golfers assume the risks associated with operating a golf cart on the steep terrain of a "mountain" type golf course such as the one at issue in this case because the steep grades are inherent in the design of the course, expected by the golfer, and plainly visible.

Nevertheless, I concur in the result in this case because there was evidence supporting Manley's claim that he was injured in the golf cart accident as a result of a hazardous condition on the golf course which was not expected or plainly visible and of which American Golf Corporation had superior knowledge. Although the steep grade of the cart path was plainly visible to Manley as he approached it, there was evidence that the hairpin curve farther down the path was not visible until he approached it in the cart while driving down the steep grade. There was no evidence that Manley was not operating the golf cart in a reasonably safe manner as he approached the curve considering the obvious steepness of the path. Even assuming the cart and its brakes were functioning properly, there was evidence that the steep grade of the path and the momentum of the cart along with the sudden appearance of the hairpin curve combined to create a hazardous condition which was a proximate cause of the accident.

Because it was aware of previous golf cart accidents at the hairpin curve, American Golf Corporation knew the conditions at the curve were potentially hazardous and called for the exercise of extreme caution by golf cart drivers as they approached the concealed curve. The signs placed by American Golf Corporation warning golfers to exercise caution because of the steep path but giving no warning of the additional hazard caused by the hidden hairpin curve were not adequate to fully inform Manley of the hazard. Since Manley had never before played the course, he had no actual knowledge of the additional hazard created by the hairpin curve. Accordingly, the case was properly submitted to the jury on evidence that American Golf Corporation had superior knowledge of a hazardous condition which proximately caused the accident.

I concur fully in Case No. A96A0616.

DECIDED JUNE 4, 1996 —
RECONSIDERATION DENIED JUNE 28, 1996.

*Smith, Gilliam & Williams, Matthew T. Smith, Steven P. Gilliam*, for appellant.

*Mitchell & Mitchell, William J. Kimsey*, for appellees.