## 55068. PARKER v. THE STATE.

SMITH, Judge.

Parker was convicted of second degree arson in connection with the burning of a restaurant which Parker operated. On appeal, he contends that the evidence did not authorize the verdict, that the state improperly used expert opinion evidence, that inadmissible hearsay was admitted, that his character was erroneously placed into issue, and that the state wrongfully withheld exculpatory evidence. We find no error and affirm the judgment.

The state introduced evidence from which the jury could have concluded the following: Parker operated a restaurant in Fort Valley, Georgia. Shortly after increasing the insurance coverage on the restaurant, he hired one Moye, a frequent patron of the restaurant, to burn the restaurant. Parker began to lock a chain on the

driveway, thus preventing nighttime police patrols of the rear of the premises, and for the first time in memory he began to close the restaurant on Sundays. Then, on a Sunday night, he left a mixture of gasoline and diesel fuel at the rear of the building, and left the rear door unlocked. Moye showed up, doused portions of the restaurant, ran a trail of fuel out the back door where he doused some mops and brooms at the rear of the building, closed the door, and set fire to the stream of fuel. Fire traveled along the fuel into the restaurant, gutting it. Evidence also showed that the appellant kept a quantity of diesel fuel in the basement of his home. *Held:*

1. Though the state's "star" witness, who testified that the appellant had asked him to set fire to the restaurant, had been seriously impeached, the evidence nevertheless supports the verdict. The nature of the impeachment was that the witness had sixteen prior convictions for crimes involving moral turpitude; the witness had drunk 47 beers and some whiskey during the day prior to the time the appellant allegedly asked him to commit arson; the witness admitted he may have been confused about this conversation; the witness admitted he was testifying in hopes of the district attorney going easy against him on the arson charges he faced; and an associate of the witness testified that he considered the witness to be unreliable and would not believe him under oath. Despite all this, the credibility of the witness remains a question for the jury. *Chatman v. State,* 8 Ga. App. 842 (1) (70 SE 188) (1910); Code § 38-1806. Furthermore, the testimony of other witnesses corroborated much of this witness' testimony and made out a circumstantial case against the appellant. Hence, we cannot hold here that the verdict was contrary to the evidence.

2. Several enumerations are directed at the state's use of expert opinions about the fire.

(a) The appellant asks for reversal because the trial court permitted state's counsel allegedly to state in his opening statement that a fire analysis expert would testify that the fire was a case of arson. We cannot reach the merits of this enumeration because the alleged statement does not appear in the record, nor does the

record show any stipulation between the parties or statement by the trial court indicating what was said. Ga. L. 1965, pp. 18, 24 (Code Ann. § 6-805 (d)).

(b) The fire expert testified over objection that, in his opinion, the fire here was a "suspicious fire," that is, a "set fire," probably set by an inexperienced person. The appellant argues that the witness was concluding the ultimate fact, a conclusion properly reserved for the jury, but we disagree. The transcript shows that the expert was highly qualified in fire investigation (this fact is not contested), and he testified extensively as to the specialized scientific analysis used in investigating and interpreting the debris from this fire. Given the above, it was reasonable for the expert to draw conclusions as to the origin of the fire. The factual conclusion that the fire was set by a human, rather than accidentally, is a far cry from the legal conclusion that the appellant here was criminally responsible for arson. Similarly, see *Bryant v. Rushing,* 121 Ga. App. 430 (3) (174 SE2d 226) (1970).

(c) A volunteer fireman, who had fought more than 100 fires in a 17 or 18 year period, helped fight this fire and testified about his observations. After noting that he observed some mops and brooms burning at the rear of the building completely isolated from the main fire, he offered his characterization of this event as "peculiar." To whatever extent the witness was offering his opinion rather than a mere narration of the facts as he observed them, we think he was qualified by his experience to do so. We cannot agree with the appellant's contentions that this testimony would not help the jurors evaluate the bare observations of the fire scene, for the jurors, like most of us, have probably had scant opportunity dispassionately to observe buildings afire and thus to know what is "peculiar" and what is not.

3. There is no merit in the contention that there was harmful error in admitting proof of certain declarations of the man who admitted setting the fire. A conspiracy between this declarant and the appellant had been prima facie proved, and the jury was charged that before it could consider this declaration it must find (1) that a conspiracy was in existence (2) when the statement was made. Code § 38-306; *Wortham v. State,* 184 Ga. 674, 680 (192 SE

720) (1937). There is some support for the appellant's contention that there was no evidence to support a determination that this particular declaration was made subsequent to formulation of the conspiracy. If so, admission of the declaration was error. But we find any such error to be harmless beyond a reasonable doubt *(Morgan v. State,* 231 Ga. 280(4) (201 SE2d 468) (1973)), for the same declaration was later made by the same co-conspirator declarant at a time unquestionably during the pendency of the conspiracy. If proof of the first such declaration was erroneously admitted, that proof was merely cumulative of properly admitted evidence.

4. A former employee of the appellant's restaurant offered testimony inculpatory of the appellant. On cross examination, the appellant's counsel attempted to show bias and ill will on the witness' part in quitting the employment and later testifying against the appellant. On redirect, the state elicited testimony in which the witness explained that one reason she quit the job was her fear "of the people that were hanging around out there." We cannot agree with the appellant's contention that this testimony, which was relevant and responsive, unduly placed the appellant's character in issue. Any implications such testimony may make about the appellant's character are certainly minimal, and we conclude that the relevance of this testimony outweighed any prejudice it may have caused. *Clark v. State,* 144 Ga. App. 650 (1978); *Carroll v. State,* 143 Ga. App. 796 (1977); *Hanson v. State,* 143 Ga. App. 200 (237 SE2d 699) (1977); *Payne v. State,* 233 Ga. 294, 312 (210 SE2d 775) (1974).

5. Finally, we do not believe a new trial is required by the prosecution's failure to disclose allegedly exculpatory evidence. It is clear that the state sometimes incurs an affirmative duty to disclose exculpatory evidence which comes into its hands, and its failure to do so can amount to a denial of due process. *Carter v. State,* 237 Ga. 617 (229 SE2d 411) (1976). The question is one of materiality of the nondisclosed evidence. This court, quoting from United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1975), has observed, " 'The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt . . . [i]f the

omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.' " *Jefferson v. State,* 141 Ga. App. 712, 714 (234 SE2d 333) (1977); see also *Lundy v. State,* 139 Ga. App. 536 (1) (228 SE2d 717) (1976).

The state introduced into evidence a sample of Primrose diesel fuel additive. Also, evidence showed that the appellant had recently had a large quantity of this substance in his possession. The obvious inference to be derived from this line of evidence was that the appellant had used some of this additive in the flammable mixture he allegedly left at the rear of the restaurant. During the course of the trial, the state supplied a sample of this product to a state crime laboratory expert, who analyzed it and reported back to state's counsel that the product contained a component not found in the fire debris. The appellant strenuously argues that this finding seriously contradicts much of the state's circumstantial and corroborative evidence, and thus it should have been disclosed. However, the expert also reported to the state that his findings at that time were tentative (although further testing confirmed them); more importantly, he stated that the component found in the Primrose product but not in the fire debris was highly volatile and may very well have burned away completely in the very hot restaurant fire. Thus, there is some doubt whether the evidence is exculpatory at all, and if it is, it is only minutely exculpatory. We therefore conclude that introduction of this expert's conclusions into evidence would not have created a reasonable doubt as to the appellant's guilt; consequently, a new trial is not required because the state failed to disclose to the appellant the existence of the expert's preliminary findings.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

ARGUED JANUARY 4, 1978 — DECIDED FEBRUARY 20, 1978 — REHEARING DENIED MARCH 8, 1978 — CERT. APPLIED FOR.

Culpepper, Culpepper & Liipfert, Sampson M. Culpepper, for appellant.

W. Donald Thompson, District Attorney, Thomas J. Matthews, Charles Weston, Assistant District Attorneys, for appellee.