In the Supreme Court of Georgia

Decided:   March 21, 2016

S15A1375.  SAFFOLD v. THE STATE.

NAHMIAS, Justice.

Appellant Jeremy Saffold challenges his convictions for malice murder

and other crimes in connection with the shooting deaths of Dorothy and Michael

Walker. We affirm.[1]

1.    (a)    Viewed in the light most favorable to the verdicts, the

evidence at trial showed the following.  On the night of October 14, 2009,

Thomas Raines was visiting the Walkers, drinking moonshine with Michael in

the shed behind their trailer home on Highway 80 in Upson County.   Raines

---

[1] The crimes occurred on October 15, 2009.  On August 16, 2010, Appellant was indicted for two counts of malice murder, six counts of felony murder, burglary, arson in the first degree, two counts of aggravated battery, possession of a firearm during a commission of a crime, and theft by taking a motor vehicle.  The case was tried from February 21 to 23, 2011.  The trial court granted a directed verdict of acquittal on the felony murder and aggravated battery charges, and the jury convicted Appellant of all remaining charges.  The court sentenced Appellant to serve life in prison without parole for each of the two counts of malice murder, 20 years for burglary, 20 years for arson, five years for the firearm offense, and 10 years for the vehicle theft, all to be served consecutively. On March 7, 2011, Appellant filed a motion for new trial, which he amended on June 19 and August 17, 2012.  The trial court denied the motion on March 24, 2014.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2015 term and submitted for decision on the briefs.

saw Appellant and Octavious Hart, who both appeared to be high on drugs, enter the shed without knocking. Appellant discussed something with Michael. After about 20 minutes, Appellant and Hart left, and Michael expressed unspecified concerns about them to Raines. Around 1:00 a.m., a neighbor heard a series of gunshots from the Walker residence. Around 4:00 a.m., Appellant called his girlfriend, Katrina Corbin, asking her to pick him up on Highway 341 about 15 miles from the Walkers' home. Appellant went with Corbin to her apartment, where he put his clothes in her bathtub to wash them and bandaged his injured ear and shoulder. Appellant explained to Corbin that he and Hart had an altercation with someone off of Highway 80, that they shot at each other, and that he and Hart set fire to a house.[2]

About 7:00 a.m., sheriff's officers responded to a call about a house fire and found the Walkers' home completely destroyed by fire. The Walkers and one of their vehicles, a Chevrolet Caprice, were missing. An investigation of the scene found evidence of a struggle, two handguns that belonged to Michael, and drug paraphernalia (scales, baggies, and an "off-white, rock-type substance").

---

[2] The record does not indicate whether Hart was ever charged in relation to these events. He did not testify at Appellant's trial.

Seventeen shell casings and one bullet were found in the yard. Four of the casings were matched to an AK-47 rifle belonging to Ronald Hart, Octavious Hart's cousin, and 13 of them came from another AK-47. The burnt remains of a male torso and pelvis and a female pelvis were found in the burned-down shell of the trailer home; DNA testing later identified the remains as Michael and Dorothy Walker. The fire marshal determined that the fire had been set intentionally. The shed behind the home showed signs of forced entry, and inside there was a chair with a pool of blood around the base. There also were two pools of blood in the front yard connected to drag patterns indicating that the bodies had been dragged inside the trailer after being wounded; the medical examiner testified that the lack of soot in the lungs of the male torso indicated that Michael was not breathing during the fire.

Information provided by Raines and Corbin led the GBI to the Walkers' Caprice, which had been abandoned on railroad tracks near the area where Corbin had picked up Appellant on Highway 341. The car had Dorothy's blood on it. The roommate of one of Appellant's cousins told investigators that two weeks before the murders, he saw Appellant with an AK-47 with a wooden barrel (which Hart's gun did not have). The GBI learned that Appellant was

staying in a motel and obtained warrants for his arrest and to search his motel room. When the agents arrested Appellant at the motel two days after the murders, they also collected a bag of clothing and a pair of tennis shoes from his room. The tennis shoes and a pair of jeans found in the bag had blood on them, and testing of swabbings taken from the shoes revealed the DNA of Michael, Dorothy, and Appellant.

(b)     Appellant contends that the evidence at trial was insufficient to support his convictions under former OCGA § 24-4-6, which said: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[3]   Whether the evidence meets this test is ordinarily a question for the jury, and the jury's finding will not be disturbed so long as it is supportable as a matter of law. See Reeves v. State, 294 Ga. 673, 674 (775 SE2d 695) (2014).

The evidence in this case showed that Appellant and an associate visited the Walkers on the night that they were shot to death and their trailer home

---

[3]  This case was tried under Georgia's old Evidence Code. The evidentiary rule in former § 24-4-6 is now found in OCGA § 24-14-6.

4

deliberately set on fire, and Michael Walker expressed concerns about Appellant when he left. When Appellant's girlfriend picked him up on a nearby highway about three hours after neighbors had heard gunshots at the Walkers' residence, Appellant admitted to her that he and his associate had fought with and shot at someone in the area where the Walkers lived and had set fire to a house. Additionally, DNA from both murder victims was found on Appellant's tennis shoes, and shell casings found at the crime scene indicated that the Walkers were shot with an AK-47 rifle, a type of gun Appellant was known to possess; other shell casings came from a different AK-47 linked to Appellant's associate. Even assuming that all of this evidence is properly characterized as circumstantial, it was easily sufficient under former OCGA § 24-4-6 to support Appellant's convictions for murder, arson, and possession of a firearm during the commission of a crime.

Appellant's conviction for theft of a motor vehicle was sufficiently supported by the same evidence in conjunction with the evidence that the Walkers' missing Chevrolet Caprice was found, with Dorothy Walker's blood on it, abandoned on railroad tracks near where Appellant's girlfriend picked him up on the night of the murders. And his burglary conviction was sufficiently

5

supported by the blood pools and drag marks found at the crime scene, which indicated that the Walkers were shot before being dragged inside their home, as well as by the medical examiner's testimony that the absence of soot in Michael's lungs showed that he was not breathing during the fire. From this evidence, the jury could reasonably infer that Appellant entered the home without the Walkers' consent and that he did so with the intention of committing the felony of arson once inside. Thus, these convictions also survive scrutiny under former OCGA § 24-4-6.

In addition, although Appellant does not dispute the sufficiency of the evidence as a matter of constitutional due process, we conclude based on our review of the record that the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (defining parties to a crime); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.     Appellant contends that the tennis shoes and jeans found in his motel room should have been suppressed because they were seized in violation of his Fourth Amendment rights. The shoes and a bag containing the jeans and other clothes were found when Appellant was arrested by GBI agents at his motel room pursuant to a warrant authorizing his arrest for a parole violation. Based on the evidence from the crime scene, the agents also had obtained a search warrant to search the room for "any and all weapons that could be used in an offensive manner to include an AK-47 or SKS shoulder rifle and ammunition." Appellant does not contend on appeal that the warrants were invalid in any way.

The agent who seized the shoes and clothes during the execution of the search warrant testified at the hearing on Appellant's suppression motion that he knew at the time of the seizure, based on his training and experience, that shoes and clothes worn by the suspect could be evidence of the crimes being investigated. Accordingly, the agent lawfully seized the shoes and clothes under the plain view doctrine.[4] See Mackenzie v. State, 187 Ga. App. 840, 847 (371

---

[4] Because the search warrant authorized the agent to look for ammunition and weapons other than only long guns, he had reason to open the bag and look inside, at which point the clothes were in plain view.

SE2d 869) (1988) ("[I]f an item, apparently evidence . . . , is seized after being inadvertently discovered by an officer who saw it during a valid intrusion upon the property, the item falls within the 'plain view' doctrine and may be seized without a warrant."). See also Fair v. State, 284 Ga. 165, 175 (664 SE2d 227) (2008); OCGA § 17-5-1 (b) ("When the peace officer is in the process of effecting a lawful search, nothing in this Code section shall be construed to preclude him from discovering or seizing . . . any item . . . which is tangible evidence of the commission of a crime against the laws of this state."). Thus, the trial court did not err in denying Appellant's suppression motion and admitting into evidence the shoes, the results of the DNA tests done on swabs from the shoes, and the jeans.[5]

3.    After holding a pretrial hearing, the trial court admitted, as a similar transaction, evidence that in 2002, Appellant pled guilty to involuntary manslaughter after being involved in a drug deal and shooting that resulted in the death of an innocent female bystander.[6] Appellant contends that the court

---

[5] Because we conclude that these items were lawfully seized under the plain view doctrine, we need not address the State's other arguments in support of the admissibility of this evidence.

[6] Under Georgia's old Evidence Code, evidence of the defendant's "similar transaction" or "independent act" was admissible if the State showed that:

erred in admitting this evidence, in declining to grant a mistrial after the State failed to present evidence in line with its proffer at the hearing, and in failing to tailor the limiting instruction about this evidence that was given to the jury. We conclude that there was no reversible error in these respects.

(a)     Appellant argues that his prior crime was not sufficiently similar to the charged crimes because the intent required for involuntary manslaughter is different than the intent required for malice or felony murder. He further argues that the State asserted in its proffer at the pre-trial hearing that both incidents involved drug deals gone wrong, but then failed to present evidence at trial that the crimes in this case were related to drug dealing.

Appellant made the same arguments in his motion for new trial, and the trial court ruled that it should not have admitted the 2002 shooting evidence because the State failed to prove sufficient similarity between that incident and

---

(1) it seeks to introduce the evidence "not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of admissibility"; (2) "there is sufficient evidence to establish that the accused committed the independent offense or act"; and (3) "there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter."

Matthews v. State, 294 Ga. 50, 52 (751 SE2d 78) (2013) (citations omitted). Under the new Evidence Code, the admissibility of this sort of evidence is governed by OCGA § 24-4-404 (b).

9

the charged crimes, as the evidence the State presented at trial did not match its proffer. The court did not grant a new trial, however, because it concluded that the evidence of the 2002 incident was harmless in light of the other, overwhelming evidence of Appellant's guilt of the crimes charged in this case. Assuming (without deciding) that the trial court was correct in concluding that the similar transaction evidence should not have been admitted at trial, we agree that the admission of that evidence was harmless, in that "'it is highly probable that the [assumed] error did not contribute to the verdict.'" Peoples v. State, 295 Ga. 44, 55 (757 SE2d 646) (2014) (citation omitted).

Although evidence of a previous homicide conviction is in general quite prejudicial, Appellant pled guilty only to involuntary manslaughter as a result of the 2002 shooting, and the officer who interviewed Appellant after that shooting testified that Appellant had explained that he was defending himself. Indeed, the overall lack of similarity between the 2002 incident and the crimes charged in this case as proved at trial – i.e., the reason the trial court concluded in retrospect that the 2002 evidence should not have been admitted – limited its prejudicial impact. The evidence that Appellant was involved with drugs in 2002 may also have been prejudicial, but the jury was aware of Appellant's

10

involvement with drugs in any event, because Raines testified that Appellant appeared to be under the influence of drugs when he met with Michael Walker on the night of the murders. Against this risk of prejudice from the similar transaction evidence, we consider the other compelling evidence of Appellant's guilt of the crimes for which he was convicted, which we recounted in Division 1 above.

> Considering the trial record as whole, and weighing the evidence as we believe that reasonable jurors would, we are convinced that the jury in this case would have found Appellant guilty of the same crimes had the [2002 shooting] evidence not been . . . admitted. . . . We therefore conclude that it is highly probable that the trial court's [assumed] error in admitting the independent offense evidence did not affect the jury's verdict, and a new trial is not required.

Id. at 58. See also Billings v. State, 293 Ga. 99, 103 (745 SE2d 583) (2013). Likewise, because the evidence was harmless, it was not an abuse of discretion for the trial court to decline to grant a mistrial, as a mistrial is required only when "essential to the preservation of the right to a fair trial." Jackson v. State, 292 Ga. 285, 689 (740 SE2d 609) (2013). See also Sears v. State, 292 Ga. 64, 68 (734 SE2d 345) (2012) (holding that where an error was harmless, no mistrial was required).

(b)    Appellant also claims that the limiting instruction given for

the 2002 shooting evidence was improper because it allowed the jury to consider the evidence to prove identity, a purpose not approved by the trial court at the pretrial hearing.[7]  Because we have assumed that this evidence was erroneously admitted, we similarly assume that it was error for the trial court to instruct the jury that it could consider the evidence for *any* purpose.  However, we also have concluded that the admission of the 2002 shooting evidence was harmless, and limiting the jury's consideration of harmless evidence does not render it harmful.

4.     Appellant argues that the fire marshal's expert testimony should not have been admitted because it was not based on principles, methods, or techniques of proven reliability.  See former OCGA § 24-9-67.[8]  Appellant did not raise this objection to the marshal's testimony at trial, however, and thus it was not preserved for review on appeal.  See Dyer. State, 295 Ga. 173, 177 (758 SE2d 301) (2014).

---

[7]  At the hearing, the trial court ruled that the similar transaction evidence would be admissible to show Appellant's bent of mind, course of conduct, plan and scheme, and motive.

[8]  Former OCGA § 24-9-67 said: "In criminal cases, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."  This provision is found in the new Evidence Code at OCGA § 24-7-707.

12

At trial, Appellant objected to the fire marshal's testimony only on the ground that it impermissibly went to the ultimate issue for the arson charge in the case; he raises the same objection on appeal. After being qualified as an expert witness, the marshal testified based on his observations and experience that the fire at the Walkers' residence was intentionally set. This testimony did not invade the province of the jury in deciding whether Appellant had committed arson, because the testimony did not address other elements of the crime of arson or directly implicate Appellant as the perpetrator of that crime. See Parker v. State, 145 Ga. App. 205, 207 (243 SE2d 580) (1978) ("The factual conclusion that the fire was set by a human, rather than accidentally, is a far cry from the legal conclusion that the appellant here was criminally responsible for arson."). Moreover, the conclusion that the fire was intentionally set was not one jurors would ordinarily be able to draw for themselves. See id. See also Smith v. Smith, 247 Ga. 612, 619 (277 SE2d 678) (1981) ("Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken

13

of the average layman.").[9]

5.  Appellant next contends the trial court erred in failing to grant a mistrial based on improper communication between jurors. At trial, Appellant's counsel told the court that other attorneys and a secretary had told him that two jurors were passing notes. In response, the court admonished the jurors not to discuss the case with each other until deliberations began and gave them an opportunity to say something if they could not follow that directive; no juror responded. Appellant then moved for a mistrial, which the court denied.

At the end of the trial, the court directed that all the jurors' notes be collected and preserved to be examined if Appellant raised this issue on motion for new trial. Although Appellant did raise the issue in his motion, neither he nor the State asked to examine the notes. Indeed, Appellant offered no evidence of the existence or contents of the notes that he asserts were passed between the jurors. Given this lack of proof of any real problem, we conclude that the trial court's solution – reminding the jurors not to communicate about the case before deliberations and giving them an opportunity to express any concerns – was

---

[9] Under the new Evidence Code, testimony as to an "ultimate issue" is governed by OCGA § 24-7-704.

14

appropriate, and a mistrial was not mandated. See <u>Chenoweth v. State</u>, 281 Ga.

7, 11-12 (635 SE2d 730) (2006) ("Because the jurors' answers to the trial

court's questions show that the jurors' error in discussing the evidence [before

deliberations] was not so inherently prejudicial as to require a new trial, we

conclude that the trial court did not err in denying Chenoweth's motion for

mistrial.").

6.      Appellant argues that the trial court impermissibly allowed the State

to elicit evidence of his bad character during the testimony of his girlfriend,

Katrina Corbin. When the State asked Corbin what Appellant did when he got

to her house on the night of the crimes, she said that he "took a bath and washed

his clothes, because he had to get up the next morning to go to the parole

officer." Appellant immediately objected, and the trial court sustained the

objection and instructed the jury to disregard Corbin's answer as unresponsive

to the question. Appellant did not move for a mistrial or object to the court's

curative measure, so this argument was not preserved for review on appeal. See

<u>Woodham v. State</u>, 263 Ga. 580, 582 (439 SE2d 471) (1993); <u>Bussey v. State</u>,

263 Ga. App. 56, 60 (587 SE2d 134) (2003).

7.      Finally, Appellant contends that there was no evidence that he acted

15

as a party to a crime, and that the trial court therefore committed reversible error by giving the jury a charge on parties to a crime pursuant to OCGA § 16-2-20.[10] At trial, Appellant objected only to the portion of the instruction saying that a person is a party to a crime if he "procures another to commit the crime." While there may have been no evidence that Appellant procured someone else to commit the crimes, the State did not argue to the contrary. Thus, it is highly probable that the jury did not convict Appellant based on this surplus language in the charge, and any error in including it was harmless. See Wetzel v. State, 298 Ga. 20, 34 n.17 (779 SE2d 263) (2015); Bulloch v. State, 293 Ga. 179, 188 (744 SE2d 763) (2013).

To the extent that Appellant now disputes the remainder of the party to a

---

[10] OCGA § 16-2-20 says:

(a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.
(b) A person is concerned in the commission of a crime only if he:
    (1) Directly commits the crime;
    (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;
    (3) Intentionally aids or abets in the commission of the crime; or
    (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

The trial court's instruction substantially tracked the language of the statute except for subsection (b)(2), which was not mentioned.

crime instruction, he did not raise this objection at trial, so his claim is reviewed on appeal only for plain error, meaning that "we will reverse the trial court only 'if the instructional error was not affirmatively waived . . ., was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" Brown v. State, 297 Ga. 685, 691 (777 SE2d 466) (2015) (citation omitted). See also OCGA § 17-8-58 (b). Ample evidence was presented at trial to support a jury finding, and thus a jury instruction, that Appellant "aid[ed] and abet[ted]" an associate in committing the crimes charged. As to whether Appellant "intentionally advise[d], encourage[d], hire[d], [or] counsel[ed]" another person to commit a crime, there may have been no evidence to support such a finding, but again the State never argued that Appellant was a party to the crime on these grounds, and it is quite unlikely the jury based its verdict on this surplus language. See Wetzel, 298 Ga. at 34 n.17. In sum, because the trial court's failure to tailor the charge did not likely affect the outcome of the proceedings, it was not plain error. Brown, 297 Ga. at 691.

Judgment affirmed. All the Justices concur.