306 Ga. 736
FINAL COPY

S19A0791.  COX v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Joshua James Cox was convicted of felony murder and possession of a firearm during the commission of a felony in connection with the shooting death of Terrell Clark.[1]  Cox appeals, arguing that the evidence was insufficient to support his convictions; that he was denied effective assistance of counsel; and that the trial court erred in denying Cox's motion for mistrial, erred

---

[1] On December 15, 2015, Cox was indicted by a Lamar County grand jury for malice murder, felony murder predicated on possession of a firearm during the commission of a felony, and two weapons charges.  Following a jury trial from January 23-26, 2017, Cox was found guilty of felony murder and possession of a firearm during the commission of a felony, and he was acquitted of the remaining charges; he was sentenced to life in prison plus five years' probation.

Cox filed a motion for new trial on February 17, 2017, which he amended through new counsel on October 9, 2018.  After a hearing, the trial court denied the motion on January 16, 2019.  Cox timely filed a notice of appeal; the appeal was docketed to the April 2019 term of this Court and was thereafter submitted for a decision on the briefs.

in admitting Cox's custodial statement into evidence, and erred in denying Cox's motion to excuse the jury pool. We affirm.

1. Cox claims that the evidence was insufficient to support his convictions because the evidence showed that he was involuntarily intoxicated and defending himself at the time of the shooting. When evaluating the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). See also *McNeely v. State*, 296 Ga. 422, 425 (1) (768 SE2d 751) (2015) ("Resolving evidentiary

2

conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court." (Citations and punctuation omitted.)).

Viewing the evidence in this light, the record shows that Cox and Clark met in early 2015 and became acquaintances who often smoked marijuana together. On July 13, 2015, Cox bought LSD ("acid") from Clark and then went to a friend's house where he took one "hit" of acid every hour starting at 8:00 p.m. and ending at midnight.

The next morning, Clark invited Cox to his home and the men smoked marijuana together. Around 9:00 a.m., one of Clark's neighbors heard two gunshots. She did not hear any argument or commotion prior to the shooting. After the gunshots, the neighbor saw a man, later identified as Cox, out in the roadway shouting into his phone. The evidence established that Cox had called 911, admitted to the dispatcher that he had just shot someone, and stated that he was going to lay his gun down in the road and wait until

3

officers arrived. However, Cox refused to provide the dispatcher with his location. Cox dropped to his knees and threw his phone on the ground. He then stood abruptly, ran down the driveway, jumped into his truck, and sped off.

Cox drove to his parents' house and, upon his arrival, Cox's father, Kenneth, who was also a police officer, noticed that his son was speaking and acting erratically, leading Kenneth to conclude that his son was under the influence of some kind of substance. Kenneth immediately removed all weapons from within his son's reach, including a gun that had fallen out of Cox's truck. Cox's strange behavior continued wherein he: physically attacked both of his parents, removed all of his clothing, jumped into a nearby pond, and stomped on the television remote control with his bare feet. His behavior had become so erratic that Kenneth ultimately tased and handcuffed his son until the police arrived.

In the meantime, after receiving additional calls reporting the shooting, the police arrived at Clark's home and found him dead in

4

the front yard. Officers located marijuana and a smoking device inside the home, and found two shell casings near Clark's body, which were later determined to have been fired from the handgun that had fallen from Cox's truck. The medical examiner concluded that Clark died as a result of two gunshot wounds: one to the head and one to the torso. Additionally, there was no evidence of soot or stippling on Clark's clothing, indicating that he was not shot at close range. Officers obtained blood samples from Clark and Cox,[2] and the jury heard evidence that the only drug present in both men's blood was marijuana.[3]

Cox was initially arrested for the domestic dispute that occurred at his parents' house. However, while in jail, Cox admitted to a detention officer and a sergeant that he thought he had killed someone. Detectives interviewed Cox the next day. He admitted to

---

[2] Cox's blood was drawn on July 15, the same day that he was interviewed by law enforcement.

[3] These reports are separate from the independent toxicology report discussed in Division 2 (a) that was excluded prior to trial.

police that he had purchased acid from Clark the night before the shooting and took five "hits" of acid. He told officers that he no longer felt the effects of the drug when he arrived at Clark's home the next morning before the shooting occurred. However, after he and Clark smoked marijuana, Cox told the investigators that he began to feel as if he was "tripping" again. Cox also told the investigators that he noticed that Clark acted strangely after they smoked marijuana, explaining that Clark "started talking crazy a** s**t," stating things like "this [is] it" and "this [is] the day."

Cox stated that he needed to leave and the men walked out to Cox's truck. The vehicle was unlocked, but Clark had the keys. After they reached the vehicle, Clark put his hands on Cox's shoulder and back, which caused Cox to push Clark away. Cox said that Clark then started speaking in another language and growling, which "freaked him out." Cox said that Clark "came at" him and, as the unarmed Clark approached, Cox grabbed a gun from the door of his truck and shot twice. Cox told officers that, based on all the

6

circumstances, he was scared and felt that he had no other option but to shoot Clark.

Based on the foregoing, we find that the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Cox was guilty of the crimes for which he was convicted. See *Jackson*, supra. The jury was free to reject Cox's claim that he was involuntarily intoxicated and acting in self-defense at the time that he shot and killed Clark. See *Shaw v. State*, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013) ("[T]he issues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (Citation and punctuation omitted.)). See also OCGA § 16-3-4 (c) ("Voluntary intoxication shall not be an excuse for any criminal act or omission.").

2. Next, Cox alleges four instances of ineffective assistance of counsel. Specifically, he contends that trial counsel was ineffective for: (a) moving to exclude an independent toxicology report showing

7

that Clark had LSD in his system on the day of the shooting; (b) failing to move for a mistrial after discovering that the jury had participated in improper communications; (c) failing to move for a mistrial or request a curative instruction after the State improperly commented on inadmissible evidence during closing arguments; and (d) failing to move for a mistrial or request a curative instruction after the State put forth improper victim impact evidence in its closing argument. Cox also alleges that the cumulative effect of trial counsel's errors substantially prejudiced him at trial.

In order to establish constitutionally ineffective assistance, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579 (2) (731 SE2d

359) (2012). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (Citation omitted.) *Harrington v. Richter*, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011). Indeed, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). With these principles in mind, we review Cox's claims of ineffective assistance.

(a) *Pre-trial Motion in Limine*

During pre-trial proceedings, trial counsel successfully moved to exclude an independent toxicology report, which revealed that Clark had LSD in his system when he died. Cox alleges that this amounted to ineffective assistance because the report would have been helpful to his defense. However, trial counsel's strategic decision to move to exclude the report was reasonable.

The record shows that part of the defense's theory was that the marijuana Cox and Clark smoked on the day of the shooting was laced, without Cox's knowledge, with NBOMe, a synthetic form of acid that, unlike LSD, does not show up on a general toxicology screen. In support of this theory, trial counsel called Dr. Gaylord Lopez as an expert witness at trial in order to explain how NBOMe affects the human body and what additional testing is needed in order to detect its presence in blood. Trial counsel relied upon this evidence to argue that Cox's involuntary ingestion of this synthetic drug affected his mental capacity at the time of the shooting, to explain Cox's bizarre behavior at his parents' house after the

shooting, and to attack the reliability of the general toxicology screens introduced into evidence in the case.

At the motion for new trial hearing, trial counsel explained that he sought to exclude the independent toxicology report showing LSD in Clark's blood because it would have hurt the defense's theory that both men had smoked marijuana laced with NBOMe on the day of the shooting, especially where the other toxicology reports only showed the presence of marijuana. Trial counsel's strategy was reasonable.

> While other counsel, had they represented appellant, may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

*Lewis v. State*, 246 Ga. 101, 105 (3) (268 SE2d 915) (1980). We agree with the trial court's conclusion that Cox has failed to show deficient performance under *Strickland*.

11

(b) *Alleged Improper Jury Communications*

During a break in the presentation of the State's case-in-chief, a bailiff informed the court and the parties that he overheard the jurors in the jury room "saying something about self-defense. That's all I heard. They were saying self-defense." The trial court informed the parties that it was going to summon the jury into the courtroom and give them further instructions. Without objection from either party, the trial court instructed the jury as follows:

> I think I told you this once at the start of trial. You're not to talk about this case. All you're going to do is cause me to have a mistrial and have to do it again. If any of you are discussing this case and it may have influenced your decisions in this case, you need to tell the Court now. And come up here and tell me. If things are fine, I'm telling you ahead of time, do not be discussing this case until the case is over with and you go to the jury room. You will cause me to do this twice and I don't want to do it twice.

None of the jurors responded to the trial court's request, and no one questioned the jurors about the alleged improper discussion. Seemingly unsatisfied, trial counsel requested, once again, that the court instruct the jurors that they were not allowed to discuss the

12

case amongst themselves. The trial court told the jury "[d]o not talk about the case to anybody or to yourselves until the case is over with." The court asked the jurors if they had any questions and, after receiving no response, the trial continued.

Cox alleges that trial counsel was ineffective for failing to move for a mistrial after discovering that the jury had participated in improper communications. However,

> [g]iven th[e] lack of proof of any real problem, we conclude that the trial court's solution — reminding the jurors not to communicate about the case before deliberations and giving them an opportunity to express any concerns — was appropriate, and a mistrial was not mandated.

*Saffold v. State*, 298 Ga. 643, 649 (5) (784 SE2d 365) (2016). And it is well settled that trial counsel cannot be ineffective for failing to make a meritless motion. See *Bradshaw v. State*, 300 Ga. 1 (3) (a) (792 SE2d 672) (2016); *Leonard v. State*, 292 Ga. 214 (4) (735 SE2d 767) (2012); *Lupoe v. State*, 284 Ga. 576 (3) (f) (669 SE2d 133) (2008).

Furthermore, the record shows that counsel made a reasonable strategic decision not to press the issue. Trial counsel testified that he did not move for a mistrial at this time because he was "happy that the jury was considering self-defense" prior to the State resting

13

its case and "felt that we had a jury that was actually going to consider self-defense. So, we actually thought we were in a good position, that we had an open-minded jury that was actually going to listen to our side of the story." In light of this reasonable strategic choice, we find that the record supports the trial court's conclusion that counsel was not ineffective.

(c) *State's Alleged Improper Comment on Evidence*

Cox alleges that trial counsel was ineffective for failing to move for a mistrial or request a curative instruction when, during closing arguments, the State allegedly improperly commented on the toxicology report that was excluded pre-trial as discussed in Division 2 (a), supra. While arguing that the defense was attempting to "muddy the waters" and place doubt in the jury's mind, the prosecutor made the following statement:

> They give you, in his opening, about grave suspicion or bare suspicion, that you shouldn't convict anybody on bare or grave suspicion. Well, he's convicting [Clark] of doctoring a blunt on bare suspicion, just based on this doctor's thing, oh it has the appearance of NBOMe. [Cox]

14

did at least ten hits [of acid] the night before. Even the doctor said that was a lot and he would expect that would cause problems. There's absolutely no evidence in [Clark's] blood of anything but marijuana that was testified to. So, if they both did it, it's not in [Clark's] blood. He's trying to muddy the waters.

Cox alleges that counsel was ineffective for failing to object to this statement because the prosecutor improperly commented on the excluded toxicology report showing LSD in Clark's system. However, reading the prosecutor's closing argument as a whole, an objection would not have been successful, as the prosecutor did not make an improper comment on inadmissible evidence. Indeed, the prosecutor was responding to defense counsel's NBOMe arguments by focusing the jury's attention on what the only evidence presented actually showed — i.e., that there was only marijuana found in Clark's and Cox's blood. And counsel cannot be deficient for failing to make a meritless objection. See *Duvall v. State*, 290 Ga. 475 (2) (b) (722 SE2d 62) (2012).

(d) *State's Alleged Improper Victim Impact Argument*

15

Cox also alleges that trial counsel was ineffective for failing to move for a mistrial, object, or request a curative instruction after the State put forth allegedly improper victim impact evidence in its closing argument. Specifically, the prosecutor made the following statement:

> Ladies and Gentlemen, this drug epidemic produces no winners or losers. This is a unique trial right here. It's caused a lot of hurt. We've got a family over here who have heard it every day since July 14, 2015. I will tell you this, Ladies and Gentlemen. This defendant is personally responsible for the cause of that hurt. I ask you find him guilty and hold him personally responsible.

Cox contends that this argument was improper victim impact evidence and that trial counsel was ineffective for failing to move for a mistrial, object, or ask for a curative instruction. But the record shows that counsel made a reasonable, strategic decision not to take any action in regard to the State's argument.

At the hearing on Cox's motion for new trial, trial counsel testified that he interpreted the prosecutor's argument as a demand for justice and a call for accountability, not an improper victim

16

impact statement. Accordingly, counsel did not feel that an objection was warranted. See *Poellnitz v. State*, 296 Ga. 134, 136 (765 SE2d 343) (2014) ("It is not improper for a prosecutor to appeal to the jury to convict for the safety of the community, or to argue to the jury the necessity for enforcement of the law and impress on the jury its responsibility in this regard." (Citation and punctuation omitted.)).

Regardless of whether trial counsel was accurate in his interpretation, he further explained that he did not want to "draw more attention to the fact that [Clark] was dead," explaining that an objection "would have led to a colloquy between myself and the State that just would have hammered that fact. And I thought we were in a decent position at that point in time. So, strategically, I was not going to object." In light of this reasonable strategic choice, and the brevity of the State's argument, we find that the record supports the trial court's conclusion that counsel was not deficient and that Cox was not prejudiced by the failure to object.

(e) *Cumulative Effect*

Cox argues that the cumulative effect of counsel's alleged errors prejudiced the outcome of his trial. When reviewing such a claim, we "evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (Citation and punctuation omitted.) *Bulloch v. State*, 293 Ga. 179, 183 (2) (744 SE2d 763) (2013). Because Cox has failed to show deficiency on any of his allegations of ineffective assistance, his cumulative effect assertion has no merit. See *Chapman v. State*, 290 Ga. 631 (2) (e) (724 SE2d 391) (2012).

3. Finally, Cox alleges that the trial court erred by: (a) not declaring a mistrial after improperly commenting on the evidence in front of the jury; (b) failing to suppress Cox's custodial statements to officers, as they were not made knowingly and voluntarily; and (c) denying Cox's motion to excuse the jury pool after the jury was tainted by outside protestors before the start of trial. We review these claims in turn.

18

(a) *Alleged Improper Comments on the Evidence*

The record shows that, as defense expert witness Dr. Gaylord Lopez was stepping down from the stand, the following transpired:

> COURT: . . . Is he released?
> DEFENSE: Yes.
> COURT: Whatever you want to do Dr. Lopez. Was it a doctor? He is a doctor, isn't he? Okay.
> DEFENSE: He is a doctor of pharmacy.
> COURT: But he's still a doctor.

Defense counsel immediately requested a bench conference and asked the court whether it meant to imply that the expert was not a real doctor. The trial court responded, "No. I said was his title a doctor." Trial counsel moved for a mistrial, arguing that the court improperly commented on the credibility of the defense's expert. The trial court denied the motion, explaining, "I was not sure his title was a doctor and that's what I was trying to get to." Cox claims that the trial court's ruling was error, as it violated OCGA § 17-8-57. We disagree.

OCGA § 17-8-57 states, in relevant part, that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." Id. at (a) (1). "The purpose of OCGA § 17-8-57, at least in part, is to prevent the jury from being influenced by any disclosure of the trial court's opinion regarding the credibility of a witness," because "[t]he determination of the credibility of a witness is soundly within the province of the jury and is a material fact in every case." (Citations omitted.) *Murphy v. State*, 290 Ga. 459, 460 (2) (722 SE2d 51) (2012).

In this instance, and viewing the trial court's statement in the proper context, the trial judge's comment cannot reasonably be construed as commenting upon Dr. Lopez's credibility. Accordingly, we find no error.

(b) *Custodial Statements*

Next, Cox contends that the trial court erred by failing to suppress his custodial statement to officers because he was still

20

under the influence of drugs at the time of his interview and, therefore, could not have knowingly and voluntarily waived his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). Prior to trial, the court held a *Jackson v. Denno*[4] hearing on Cox's motion to suppress his custodial statement. Two investigators testified at the hearing; the State introduced a signed *Miranda* waiver; and the trial court reviewed the video of Cox's custodial interview. After the hearing, the trial court determined that Cox's statement to investigators was "knowingly and voluntarily made after the Defendant was read *Miranda* [rights]," and ruled the statement admissible at trial. We find no error.

"The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances." (Citation omitted.) *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008). "Although

---

[4] 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

21

we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts." (Citation omitted.) *Clay v. State*, 290 Ga. 822, 822-823 (725 SE2d 260) (2012). We "will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous." (Citation omitted.) *Wright v. State*, 285 Ga. 428, 432 (677 SE2d 82) (2009). However, "'(w)here controlling facts are not in dispute, . . . such as those facts discernible from a videotape, our review is de novo.'" (Citation omitted.)*Vergara*, 283 Ga. at 178.

The record shows that investigators waited a full day before speaking with Cox so as to ensure that he was sober at the time of the interview. At the *Jackson v. Denno* hearing, the investigators testified, and the videotape of Cox's confession showed, that he was advised of his *Miranda* rights, and that he fully understood those rights and knowingly waived the same in order to speak with law enforcement. The video also showed that: Cox was calm, coherent, and alert during his interview; he was oriented to time and place;

answered questions appropriately; and he gave a clear and detailed description of events. See, e.g., *Norris v. State*, 302 Ga. 802 (II) (809 SE2d 752) (2018). Indeed, there is nothing in the record to show that Cox was under the influence of any substance at the time of his interview.

Because the evidence supports the trial court's conclusion that Cox knowingly and voluntarily waived his *Miranda* rights before giving his custodial statement to police, it was not error for the trial court to admit the statement into evidence at trial.

(c) *Motion to Excuse Jury Pool*

Prior to the start of Cox's trial, the court transferred his case from Lamar County to Monroe County because of the publicity surrounding the case. On the morning of trial, and before the jurors were officially qualified to sit and hear the case, the trial court asked the jury pool if "anything occurred today prior to us getting started that may have [a]ffected your ability to serve as a juror" in the case. The trial court received no response. Defense counsel then

approached the bench and moved the court to excuse the jury, arguing that three protestors standing outside the courthouse with signs "poisoned" the entire jury pool. The State opposed the motion and contended that there was only one person outside the courthouse with a sign. The trial court withheld ruling on the motion and continued to qualify the jury, asking the potential jurors whether they had formed an opinion as to the guilt or innocence of the accused and if they had any prejudice or bias in the case.

At this time, trial counsel re-approached the bench and renewed his motion, once again arguing that the pool was "tainted by the protestors out front" and that "some of [the jury] may have been intimidated." The State responded that "everybody was asked . . . if they had any knowledge or [had] heard [anything about] this case and . . . nobody said they were intimidated or knew anything about this case." The trial court agreed and denied the motion. Cox alleges that this was error.

This Court reviews the excusal of potential jurors for cause for an abuse of discretion.  See *Akhimie v. State*, 297 Ga. 801, 806 (2) (777 SE2d 683) (2015).  There is nothing in the record showing a basis for excusing any of the jurors based on potential bias or exposure to the protestors outside the courthouse on the first day of jury selection.  The record shows that the protestors were limited in number, and no evidence was presented to the trial court to show that any of the jurors saw or interacted with any of these protestors.  Indeed, prior to the start of voir dire, the trial court asked the jury pool if anything had occurred that morning that affected their ability to be impartial, and the court received no response.  Because there is only trial counsel's speculation that the presence of the protestors affected the jurors and their ability to remain fair and impartial, the trial court did not abuse its discretion in denying Cox's motion to excuse the entire jury pool.

*Judgment affirmed.  All the Justices concur.*

DECIDED AUGUST 19, 2019 --- RECONSIDERATION DENIED SEPTEMBER 9, 2019.

Murder. Lamar Superior Court. Before Judge Wilson.

*Miller & Key, J. Scott Key, Kayci N. Timmons*, for appellant.

*Richard G. Milam, District Attorney, Cynthia T. Adams, Elizabeth K. Bobbitt, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.