In the Supreme Court of Georgia

Decided:   September 14, 2015

S15A0992. BROWN v. THE STATE.

NAHMIAS, Justice.

Appellant Corey Allen Brown was convicted of felony murder based on child cruelty in connection with the death of two-year-old Prince Davis, Jr. Appellant contends that the evidence presented at his trial was insufficient to support his conviction; that his trial counsel provided ineffective assistance by failing to object to the jury instructions on proximate causation and by failing to request a mistrial during closing arguments; and that the trial court erred by giving a jury instruction on prior consistent statements.  We affirm.[1]

---

[1] The victim died on January 16, 2007.  On February 13, 2007, Appellant was indicted in Liberty County for two counts of malice murder, two counts of felony murder, and two counts of cruelty to children in the first degree.  Appellant was re-indicted on September 14, 2009, for the same charges.  The State filed notice of its intent to seek the death penalty, but later decided to seek a sentence of life without parole.  Appellant and Andrea Wilson, who had been indicted separately, were tried together from October 20 to 27, 2010.  The jury found Appellant not guilty of malice murder but guilty of the remaining four counts, and the trial court sentenced him to serve two concurrent terms of life without parole for the two counts of felony murder.  On November 22, 2010, Appellant filed a motion for new trial, which he amended on September 6, 2013.  After an evidentiary hearing, the trial court denied the motion on its substantive grounds, but noted the need to re-sentence Appellant to address a merger issue.  On November 24, 2014, the trial court entered an order re-sentencing Appellant to life in prison without parole for only one count of felony murder and vacating or merging the remaining counts.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2015 term and submitted for decision on the briefs.

1.    Viewed in the light most favorable to the verdict, the evidence at trial showed the following. In March 2006, Appellant and Andrea Wilson, his live-in girlfriend and co-defendant, agreed to take in and care for Davis while the child's mother, who was Wilson's cousin, was incarcerated. Davis was under the exclusive care of Wilson and Appellant for the next nine months.

Family members who had previously cared for Davis testified that he was generally a happy and healthy baby with a normal appetite; his only medical problem was that he had asthma and occasionally needed to treat flare-ups with a breathing machine. By contrast, Appellant and Wilson told investigators that when Davis was in their care, he was sickly, threw temper tantrums, had seizures, and refused to eat. Appellant told investigators that he and Wilson believed Davis had demons inside him, and they frequently prayed over him and tried to force him to swallow prayer oil.

At trial, Appellant did not testify. Wilson testified that she had seen Appellant beating Davis on numerous occasions, but she was too afraid to intervene because he had been abusive to her in the past. Wilson's cousin also

We previously affirmed the conviction of Appellant's co-defendant in <u>Wilson v. State</u>, 297 Ga. 86 (772 SE2d 689) (2015).

2

testified that he saw Appellant hitting the child at least twice during his brief stay as a houseguest. Wilson and her cousin both described Appellant hitting Davis in the middle of the back by making a chopping motion with his hand. They also saw Appellant beating the child hard with a belt. Wilson and Appellant admitted to investigators that they both hit Davis with switches and a wet washcloth, but claimed that they stopped when they realized it was leaving marks on his skin.

On January 16, 2007, Appellant rode his bicycle to a job site roughly two miles from his home, signing into work at 5:15 p.m. According to Wilson, sometime after Appellant left, she was with Davis outside the house and put a Bible on his stomach until she saw "his head slumped back like he was sleepy"; she then took Davis inside, sat him in a car seat, and went into the kitchen to heat up some oatmeal; and when she returned, she found that the child had fallen out of the car seat and was not breathing. Wilson went to a neighbor's house to call 911 at approximately 6:43 p.m. The paramedics and emergency room staff could not revive Davis, and he was pronounced dead at the hospital at 8:00 p.m.

The State's medical expert – the forensic pathologist who performed the autopsy on Davis – testified that the time of death was between 4:00 and 6:00

p.m. and that the cause of death was battered child syndrome. Contributing factors were malnutrition, medical neglect, chronic blunt force trauma, and acute blunt force trauma; these factors acted in concert, and there was no specific, isolated acute injury which alone caused his death. Over 160 different injuries covered Davis's entire body, 44 of which were inflicted during the last two hours of his life. These injuries included bruises on his brain, spine, kidneys, and face; numerous scars, scabs, abrasions, and burn marks; bruised and swollen genitalia; and a necrotic (gangrenous) toe that resulted from an immersion burn at least a week before his death. The autopsy revealed blood in the child's retinas and cervical vertebrae, indicating chronic and recent trauma that could have affected Davis's ability to breathe. Many of the injuries were pattern bruises consistent with a wire clothes hanger. The injuries appeared to be neither accidental nor self-inflicted.

In addition, the presence of ketone bodies in the child's urine indicated starvation; Davis weighed only 21 pounds when he died. The State's expert testified that this lack of sustenance jeopardized Davis's health and made it harder for his body to recover from the physical abuse he suffered. Apart from oatmeal, investigators found no food suitable for a child in Appellant's home,

4

and Appellant and Wilson admitted that they never obtained medical treatment for Davis.

Appellant's medical expert reviewed the autopsy report and agreed that Davis was clearly malnourished, that the lack of sustenance jeopardized his health, and that he had many injuries that were not accidental or self-inflicted. The defense expert opined, however, that the combination of the injuries and malnourishment was not fatal. Pointing to testimony from Wilson that she believed "if I didn't put the Bible on him, to be honest, this wouldn't have happened," and evidence of a fresh bruise on Davis's upper abdomen, the defense expert asserted that Davis's time of death was 6:30 p.m. and the cause of death was compression asphyxiation. But the State's expert disagreed, explaining that the abdomen bruise was not shaped like a book and that, without direct evidence, compression asphyxiation can only be a diagnosis of exclusion.

2.      Appellant contends that the State did not sufficiently prove that any specific action of his proximately caused Davis's death. We disagree.

Appellant was convicted of felony murder based on depriving Davis of necessary sustenance. Under OCGA § 16-5-70 (a),

[a] parent, guardian, or other person supervising the welfare of or

having immediate charge or custody of a child under the age of 18 commits the [felony] offense of cruelty to children in the first degree when such person willfully deprives the child of necessary sustenance to the extent that the child's health or well-being is jeopardized.

The evidence at trial showed that Appellant and Wilson were the exclusive care-givers for Davis during the final nine months of his life. Wilson appears to have been the child's primary care-giver, but the evidence established that Appellant and Wilson aided and abetted each other in the mistreatment of the child. See OCGA § 16-2-20 (defining parties to a crime).

Moreover, Appellant took direct responsibility for Davis's nourishment, telling investigators that he specifically made sure there was enough food for Wilson and Davis because he believed it was a man's duty to provide for his family. At the time of Davis's death, however, there was no food in the house suitable for a child other than oatmeal, and the ketone bodies in the child's urine indicated that he was severely malnourished and had been for an extended period of time. Accordingly, the jury could reasonably conclude that Appellant participated in willfully depriving Davis of necessary sustenance to the extent that the child's health and well-being were jeopardized, in violation of OCGA § 16-5-70 (a). See Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It

6

was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)); Knight v. State, 233 Ga. App. 819, 821-822 (505 SE2d 796) (1998) ("Whether [Appellant] either perpetrated or otherwise was a party to [depriving a child of necessary sustenance], within the meaning of OCGA § 16-2-20, and whether the act was done willfully, were issues for jury resolution.").

A defendant is guilty of felony murder if, in the commission of the predicate felony, he proximately causes the victim's death. See OCGA § 16-5-1 (c); State v. Jackson, 287 Ga. 646, 648-652 (697 SE2d 757) (2010). This Court has long recognized that:

> Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.

Wilson v. State, 190 Ga. 824, 829 (10 SE2d 861) (1940). See also Jackson, 287 Ga. at 654 ("Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent,

7

and unforeseen intervening cause."). In this case, the State's medical expert testified that Davis's malnutrition materially contributed to his death from battered child syndrome, because that starvation severely affected the child's ability to heal from the chronic and acute physical abuse he suffered at the hands of Appellant and Wilson. Thus, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crime for which he was convicted, and in particular to find that Appellant's participation in depriving Davis of necessary sustenance was a proximate cause of the child's death. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); Wilson v. State, 297 Ga. 86, 87 (772 SE2d 689) (2015); Wilson, 190 Ga. at 829.

3. Appellant next contends that his trial counsel provided ineffective assistance in two ways. To prevail on these claims, Appellant must show that his lawyers' performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Strickland v. Washington, 466 US 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984); Woodard v. State, 296 Ga. 803,

8

814-815 (771 SE2d 362) (2015). Neither of Appellant's claims satisfies this test.

(a) Appellant asserts first that his trial counsel were ineffective in failing to object to the pattern felony murder instruction given by the trial court, suggesting that his lawyers should have requested a separate charge that explained the principles of proximate causation more fully. During the final jury charges, the court read the indictment, which tracked the causation language of the felony murder statute; gave instructions on parties to a crime and the child cruelty charges; and in instructing on the felony murder counts, specifically advised the jury that the victim's

> homicide must have been done in carrying out the unlawful act and not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be some legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was at [an] end or before any attempt to avoid conviction or arrest for the felony. The felony must have a legal relationship to the homicide, be at least concurrent with it in part and be a part of it in an actual and material sense. A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

> When viewed as a whole, these charges were sufficient to instruct the jury

9

on the principles of proximate causation relevant to this case. See White v. State, 281 Ga. 276, 280 (637 SE2d 645) (2006) ("Jury instructions are read and considered as a whole in determining whether there is error."). In addition, Appellant has not identified the specific alternative or additional instructions he believes should have been requested to improve the jury's understanding of the concept. Thus, he has failed to show that there is a reasonable probability that the outcome of the trial would have been different if his counsel had requested some unarticulated different charge. See Cordero v. State, 296 Ga. 703, 709 (770 SE2d 577) (2015) (concluding that the jury charge quoted above was adequate in defining proximate causation and adding that, "even if counsel had requested that the trial court charge on the principles of proximate cause discussed in Jackson and the court had done so, there is not a reasonable probability that the outcome of Appellant's trial would have been different"). See also Benson v. State, 294 Ga. 618, 623 (754 SE2d 23) (2014); Sapp v. State, 290 Ga. 247, 250-251 (719 SE2d 434) (2011).

(b)    Appellant also contends that his trial lawyers were ineffective in failing to object or move for a mistrial when the prosecutor began to cry during his closing argument. The trial transcript does not indicate any such

emotional incident, nor did the judge or any of the five experienced defense lawyers who were present comment on one, but at the motion for new trial hearing, the prosecutor acknowledged that he briefly became "noticeably choked up" while describing Davis's many injuries. This Court has long recognized that trials often evoke strong feelings, and "[i]t would be unreasonable to expect that all emotions be completely frozen during a trial by jury when such effective bridle on emotions cannot be sustained elsewhere." Forney v. State, 255 Ga. 316, 318 (338 SE2d 252) (1986) (citations and punctuation omitted). Lawyers should certainly strive to maintain their composure during trials, but the record here indicates that the prosecutor's emotional display was neither extended nor excessive.

At the motion for new trial hearing, Appellant's lead trial counsel said that he should have objected and moved for a mistrial, but "hindsight has no place in an assessment of the performance of trial counsel." Jones v. State, 292 Ga. 593, 600 (740 SE2d 147) (2013). Instead,

> [t]o prove deficient performance, [Appellant] must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the

11

wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

Babbage v. State, 296 Ga. 364, 367 (768 SE2d 461) (2015) (citations and punctuation omitted). Under the circumstances here, we cannot say that no competent attorney would have made the tactical decision to let the prosecutor's momentary display of emotion pass, rather than objecting and drawing attention to it. See Jones, 292 Ga. at 601; Braithwaite v. State, 275 Ga. 884, 886 (572 SE2d 612) (2002). Moreover, even if trial counsel had made an objection, the trial court would have been well within its discretion to deny a mistrial. See Dick v. State, 246 Ga. 697, 705-706 (273 SE2d 124) (1980). Accordingly, Appellant also has failed to establish prejudice on this claim.

4. Finally, Appellant contends that the trial court erred in giving the jury an instruction on prior consistent statements. Because he did not object to this instruction at trial, we review his claim only for plain error, meaning that we will reverse the trial court only "'if the instructional error was not affirmatively waived . . . , was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public

12

reputation of judicial proceedings.'" Woodard, 296 Ga. at 806 (citation omitted). See also OCGA § 17-8-58 (b).

Appellant relies on this Court's holding in Stephens v. State, 289 Ga. 758 (716 SE2d 154) (2011), that "an instruction on prior consistent statements should no longer be given except where the circumstances of an unusual case suggest that the jury may have the mistaken impression that it cannot consider a prior consistent statement as substantive evidence." Id. at 759. Although Stephens was not decided until a year after Appellant's trial, before his trial the Court of Appeals had expressed doubts about the prior consistent statements charge. See Boyt v. State, 286 Ga. App. 460, 468 (649 SE2d 589) (2007) ("The better practice would be to give no charge at all on prior consistent statements and leave that matter to the arguments of counsel."). Even assuming that the giving of the charge was "obvious" error, however, Appellant's claim fails because he has not demonstrated that the instruction "likely affected the outcome of the proceedings." The prior inconsistent statements instruction essentially just stated a truism and thus, as in most cases, any error in giving the charge was harmless. See Stephens, 289 Ga. at 760; Boyt, 286 Ga. App. at 468.

Judgment affirmed. All the Justices concur.