307 Ga. 89
FINAL COPY

S19A0705.  MOHAMED v. THE STATE.

BENHAM, Justice.

Abdullahi Mohamed was convicted of malice murder in connection with the stabbing death of fellow inmate Johnny Lee Johnson. Following the trial court's denial of his motion for new trial, Mohamed appeals, contending that the evidence is insufficient to sustain his conviction, that the trial court erred in several instances, and that trial counsel was constitutionally ineffective.[1] We affirm.

---

[1] In March 2012, Mohamed and two co-defendants were indicted by a Telfair County grand jury for malice murder. At a jury trial conducted September 4 to 5, 2013, Mohamed and co-defendant Joseph Anthony Gittens were found guilty of malice murder, while co-defendant Henry Gipson was acquitted. On September 5, Mohamed was sentenced to serve life in prison with the possibility of parole to run concurrently with his existing sentence. Gittens' case is not part of this appeal.

Mohamed filed a timely motion for new trial on September 11, 2013, which he amended on November 9, 2015. After a hearing on May 10, 2018, the trial court denied the motion as amended on August 27, 2018.  On August 31, 2018, Mohamed filed a timely notice of appeal; this case was docketed to the April 2019 term of this Court and thereafter submitted for a decision on the briefs.

Viewed in a light most favorable to the jury's verdict, the evidence presented at trial showed the following. The victim, Mohamed, and Mohamed's two co-defendants were all inmates in the D-2 dormitory at Telfair State Prison. Witnesses testified at trial that the victim was in his cell when Mohamed entered with a knife and started a fight with the victim that carried out into the cell block's common area; witnesses saw stab wounds on the victim's chest when he exited his cell.

When the fight moved into the common area, the victim used a broomstick to fight with multiple men, including Mohamed. During this time, the victim was further punched and stabbed. The victim suffered non-fatal stab wounds to his shoulder and chest and a fatal stab wound to the chest.

1. Mohamed asserts that the evidence adduced at trial was insufficient to support his conviction for malice murder and, relatedly, that the trial court erred in denying his motion for directed verdict. A challenge to the trial court's denial of a motion for a directed verdict of acquittal is subject to the same test as we

2

apply to a challenge to the sufficiency of the evidence supporting an appellant's conviction: "whether the evidence presented at trial, when viewed in the light most favorable to the verdicts, was sufficient to authorize a rational jury to find the appellant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Virger v. State,* 305 Ga. 281, 286 (2) (824 SE2d 346) (2019). See also *Jackson v. Virginia,* 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

Mohamed was charged individually and as a party to the crime of malice murder.[2] OCGA § 16-2-20 (a) provides that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Citation and punctuation omitted.) *Williams v. State,* 304 Ga. 658, 661 (1) (821 SE2d 351) (2018). Whether the evidence

---

[2] "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a).

supports such an inference is a question for the jury. See id.

In this case, two eyewitnesses testified that they saw Mohamed run into the victim's cell wielding a knife and then attack the victim. These two witnesses also testified that, when the victim emerged from his cell as the fight moved into the common area, the victim had a stab wound on his side. Mohamed, with support from his fellow aggressors, continued fighting with the victim in the common area where Mohamed was seen stabbing the victim again. As Mohamed notes, the evidence did not establish which attacker inflicted the fatal wound, but that makes no difference here; his conduct supports the jury's conclusion that he shared an intent to murder the victim, regardless of whether he inflicted the fatal wound.[3] See *Jackson v. State*, 303 Ga. 487, 489 (1) (813 SE2d 372) (2018) ("Even where it is undisputed that the victim was [fatally

---

[3] In a related enumeration, Mohamed contends that his trial counsel performed deficiently in failing to present evidence showing that Mohamed did not inflict the fatal wound. However, trial counsel cannot be considered to have performed ineffectively where he failed to introduce evidence that would have made no difference to the outcome of the trial. See *Morris v. State*, 284 Ga. 1, 4 (3) (662 SE2d 110) (2008).

wounded] by another person, every person concerned in the commission of the crime may be convicted of the crime.").

The evidence recounted above was sufficient to authorize a rational jury to find Mohamed guilty beyond a reasonable doubt of the crime of which he was convicted, see *Jackson*, 443 U. S. at 319, and, accordingly, the trial court did not err in denying Mohamed's motion for a directed verdict of acquittal, see *Virger*, 305 Ga. at 288.

2. Mohamed asserts that the trial court erred in three respects. We address each in turn.

(a) Mohamed argues that the trial court erred in permitting armed, uniformed law enforcement officers to remain around him throughout the trial, thereby unduly prejudicing him.

"[U]se of security measures to prevent dangerous or disruptive behavior that threatens the conduct of a fair and safe trial is within the trial court's discretion." *Krause v. State*, 286 Ga. 745, 750 (5) (691 SE2d 211) (2010). But we need not consider whether the trial court abused its discretion here because the record shows, and Mohamed concedes, that he failed to object to the security measures during the

5

course of the trial. "Failure to raise the issue deprives the trial court of the opportunity to take appropriate remedial action and waives appellate review of any alleged impropriety." *Weldon v. State*, 297 Ga. 537, 541 (775 SE2d 522) (2015).

(b) Mohamed next claims that the trial court erred when it admitted testimony regarding the presence of gangs and gang activity at Telfair State Prison, arguing that the evidence was irrelevant and served no purpose other than to place his character in issue.

As an initial matter, we note that, while co-defendant Gipson objected to the testimony at issue, Mohamed neither joined Gipson's objection nor raised his own. Accordingly, his claim may be reviewed only for plain error. See *Anthony v. State*, 303 Ga. 399, 408 (7) (811 SE2d 399) (2018). To establish plain error, a defendant must identify a clear and obvious legal error that he did not affirmatively waive and demonstrate that the error affected his substantial rights. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Where a defendant makes such a showing, this Court is authorized to

exercise its discretion to correct that error only where the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id.

During the presentation of its case-in-chief, the State questioned three witnesses about the presence of gangs in Telfair State Prison. First, the State asked Officer Ben Northcutt, a corrections officer at the prison, whether he was aware of any "gangs or groups or affiliations of different inmates" at the prison around the time of the crime. After Northcutt testified generally about the prison's "gang problem," the State asked him how to determine whether an inmate was a member of "a group or affiliation." At that point, co-defendant Gipson objected on grounds of relevance, which the trial court overruled. Northcutt then testified regarding clothing and tattoos inmates might display and noises they might make to indicate their affiliation with other inmates. As to specific groups present at the prison, Northcutt identified "the Muslim guys" and "the Christian guys." The State next questioned inmate Thomas Echols about his observations of "groups or affiliations or gangs" in

the prison, and Echols identified street gangs, like the Bloods and the Crips, as well as religious groups. Finally, inmate Rashard Styles testified that "a lot of gangs" were present in the prison. When Styles mentioned the Bloods and Crips, the State pressed him further, asking about other groups of people. Styles then specifically mentioned "the Muslims." These three witnesses offered no explanation as to how membership in a religious group might relate to gang activity.[4]

Presuming for the sake of argument that the admission of this concerning evidence was error, we conclude that there is no plain error because Mohamed has not demonstrated that this testimony affected his substantial rights or, in other words, that it likely affected the outcome of his trial. See *Kelly*, 290 Ga. at 33 (2) (a). Notably, there was no evidence showing either that the crime was gang-related or that the defendants were motivated to participate in

---

[4] During the presentation of co-defendant Gipson's defense, Gipson acknowledged, on cross-examination, that he, Mohamed, and Gittens were adherents of the Muslim faith and attended the same worship services at the prison. The record also shows that Mohamed wore a kufi during the trial.

the crime by virtue of shared group membership. The prosecution made no reference to such a theory either in its opening statement or closing argument. See *Peoples v. State*, 295 Ga. 44, 57 (4) (c) (757 SE2d 646) (2014) (improperly admitted evidence of appellant's prior crimes likely did not affect jury's verdict where State did not emphasize the evidence either in opening statement or in closing argument and strong evidence showed appellant was, at a minimum, guilty as a party to the crime). In light of the tenuous connection between this evidence and Mohamed, as well as the other strong evidence against him, we conclude that Mohamed cannot demonstrate that the admission of this evidence likely affected the outcome of the trial, and this claim fails. See *Harris v. State*, 302 Ga. 832, 835 (2) (809 SE2d 723) (2018) (no plain error where evidence of defendant's guilt was "strong").

(c) In his final claim of trial court error, Mohamed contends that the trial court erred — and, as a result, violated his constitutional right to be present at trial — when, outside Mohamed's presence, it responded to questions from the jury.

9

During the jury's deliberations, the jury submitted a note to the trial court in which it asked to review a DVD exhibit. Several follow-up notes were exchanged between the trial court and the jury; in each instance, the trial court formulated its response in consultation with the State and counsel for Mohamed and his co-defendants but outside the presence of the defendants themselves. Before the jury returned to the courtroom to view the exhibit, Mohamed and his co-defendants returned to the courtroom, and Mohamed's trial counsel "brought him up to speed" on what had transpired in his absence. Mohamed neither voiced an objection nor expressed opposition to the responses given to the jury by the trial court.

Assuming without deciding that Mohamed had a right to be present at these discussions, "in failing to voice any objection during the trial proceedings to [his] absence at the bench conference, . . . [Mohamed] clearly acquiesced in [his] trial counsel's waiver of [his] right to be present at that bench conference." *Williams v. State*, 300 Ga. 161, 166 (3) (794 SE2d 127) (2016) (concluding that

10

defendant acquiesced to trial counsel's waiver of her right to be present at a bench conference where defendant remained silent after being informed that conference had occurred in her absence and of the nature of the discussions). Thus, this contention is without merit.

3. Mohamed asserts that he was denied the effective assistance of trial counsel in several respects. There is no merit to any of his claims.

To prevail on his claim of ineffective assistance, Mohamed must clear a high bar. He must demonstrate not only that trial counsel's performance was objectively deficient, but also that he was prejudiced as a result of that deficient performance or, in other words, that a reasonable probability exists that the trial outcome would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to make one of these showings, this Court is not required to consider the other. See *Grant v. State*, 305 Ga. 170, 175 (5) (824 SE2d 255) (2019).

(a) Mohamed contends that his trial counsel was ineffective in failing to object to the presence of armed, uniformed law enforcement officers at trial and in failing to suggest alternative, less visible security measures. Where an appellant contends that his trial counsel was ineffective in failing to object to security measures implemented at trial, relief is authorized only where the appellant "can show that there is a reasonable probability that the [security measures] affected the outcome of the trial." *Whatley v. Terry*, 284 Ga. 555, 571-572 (V) (D) (668 SE2d 651) (2008).

At the hearing on Mohamed's motion for new trial, his trial counsel recalled that there were "over five, [but] less than ten" armed, uniformed security officers present at trial, including both sheriff's deputies and Correctional Emergency Response Team officers. The record shows that the trial court was cognizant that security measures might affect the jury's perception of the defendants, as he indicated to law enforcement that the defendants,

including Mohamed, were not to be shackled in the jury's presence.[5]

And before the jury entered the courtroom on the first day of trial, the trial court permitted the officers to spread out through the courtroom at the request of co-defendant Gittens. Again, given the strong evidence of his guilt, Mohamed has not demonstrated that his trial counsel's failure to object to these security measures affected the jury's verdict.[6]

(b) Mohamed also argues that trial counsel's failure to object to testimony regarding gangs in Telfair State Prison constitutes ineffective assistance.

As discussed in Division 2 (b) above, there was no plain error because Mohamed cannot demonstrate that the admission of this testimony affected the outcome at trial. Coextensive with that determination, he cannot demonstrate prejudice in regard to this

---

[5] Even so, we doubt that many jurors would think it remarkable at all to see enhanced security measures in a case involving three inmates accused of murder. The jury knew that the defendants were inmates, and their awareness of that fact lessens the danger of prejudice from enhanced security.

[6] We also note that Mohamed's co-defendant Gipson was tried under the same security measures as was Mohamed, yet Gipson was acquitted by the jury.

claim. See *Hampton v. State*, 302 Ga. 166, 168-169 (2) (805 SE2d 902) (2017) ("[T]his Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim.").

(c) Mohamed asserts that trial counsel was ineffective for failing to ensure that Mohamed was present at all stages of the trial, specifically at the conference discussed in Division 2 (c) above.

> When an alleged violation of the Georgia constitutional right to be present is raised not directly but rather as a claim of ineffective assistance of counsel, the defendant must show both that his lawyer acted deficiently in not asserting his right and that this deficiency caused actual prejudice to the outcome of his trial.

*Hardy v. State*, 306 Ga. 654, 661 (3) (832 SE2d 770) (2019). Assuming both that Mohamed had a right to be present at the conference and that trial counsel was deficient in failing to assert that right, Mohamed has not shown that his absence from the conference caused him any prejudice at all. See id. Thus, this claim, like the others, fails.

(d) Mohamed's next claim of ineffective assistance challenges

14

his trial counsel's failure to request a separate jury instruction on causation, again related to his repeated arguments concerning who inflicted the fatal wound.

In charging the jury, the trial court read the indictment, which alleged that Mohamed and his co-defendants "individually and as parties concerned in the commission of a crime . . . did unlawfully, with malice aforethought, *cause* the death of Johnny Lee Johnson, a human being, by stabbing [him] with a shank[.]" (Emphasis supplied.) The indictment was later sent out with the jury by the trial court. The trial court charged the jury that the State must "prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Moreover, the trial court gave instructions on the malice murder charge and on parties to a crime. Viewing the charges as a whole, they were clearly sufficient to instruct the jury on the relevant principles of causation. See *Brown v. State*, 297 Ga. 685, 689 (3) (a) (777 SE2d 466) (2015). Further, Mohamed "has not identified the specific alternative or additional instructions he believes should

15

have been requested to improve the jury's understanding of the concept." Id. Accordingly, he has failed to show how he was prejudiced as a result of counsel's failure to request "some unarticulated different charge." Id. See also *Benson v. State*, 294 Ga. 618, 623 (3) (b) (754 SE2d 23) (2014) (trial counsel not ineffective for failing to request charge on causation because "the charge as a whole instructed the jury that the State had to prove beyond a reasonable doubt that [the victim] was dead and that [defendant charged with malice murder] had caused that death by committing a criminal act").

(e) Mohamed also argues that trial counsel was ineffective for failing to adequately investigate his case and prepare for trial. But again, Mohamed hinges this claim on trial counsel's failure to investigate and present evidence regarding who inflicted the fatal wound. As we have explained throughout this opinion, whether Mohamed was personally responsible for inflicting the fatal wound is immaterial because he was charged as a party to the crime. See *Jackson*, 303 Ga. at 489 (1) ("Even where it is undisputed that the

16

victim was [fatally wounded] by another person, every person concerned in the commission of the crime may be convicted of the crime."). Accordingly, Mohamed has failed to show prejudice on this claim of ineffective assistance.

(f)   Finally, the cumulative prejudice resulting from any assumed deficiencies discussed in Division 3 is insufficient to show a reasonable probability that the result at trial would have been different in the absence of such deficiencies. See *Cochran v. State*, 305 Ga. 827, 834 (2) (e) (828 SE2d 338) (2019). We thus find no merit in Mohamed's claims of ineffective assistance.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2019.
Murder. Telfair Superior Court. Before Judge Kaufold.
*Akil K. Secret*, for appellant.
*Timothy G. Vaughn, District Attorney, Keely K. Pitts, Assistant*

[7] Mohamed raises allegations of prosecutorial misconduct because "the prosecution presented its case to the jury in a manner inconsistent with the findings in the GBI reports." However, because Mohamed "did not raise this claim of prosecutorial misconduct at trial, it was not preserved for appeal." *Brooks v. State*, 305 Ga. 600, 606 (3) (826 SE2d 45) (2019). Further, the State has wide latitude in determining how to present its case. "[T]here is no requirement that [the State] prove its case with any particular sort of evidence," so long as the evidence presented is "competent." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017).

*District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.