307 Ga. 841
FINAL COPY

S19A1044.  GITTENS v. THE STATE.

BENHAM, Justice.

Appellant Joseph Anthony Gittens was convicted of malice murder in connection with the death of fellow inmate Johnny Lee Johnson.[1] Appellant argues on appeal that the evidence is insufficient to sustain his conviction, that trial counsel was constitutionally ineffective, that he was denied the right to communicate freely with counsel, and that newly discovered evidence entitles him to a new trial. We conclude that each claim is without merit and affirm.

---

[1] The crime occurred on September 15, 2011. In March 2012, a Telfair County grand jury indicted Appellant, Abdullahi Mohamed, and Henry Gipson for malice murder. Appellant, Mohamed, and Gipson were tried jointly from September 4 to 5, 2013. A jury found Appellant and Mohamed guilty of malice murder and acquitted Gipson. The trial court sentenced Appellant and Mohamed to serve life in prison without the possibility of parole to run concurrently with their existing sentences. This Court has previously affirmed Mohamed's conviction. See *Mohamed v. State*, 307 Ga. 89 (834 SE2d 762) (2019). Appellant filed a timely motion for new trial on September 23, 2013, which was amended through new counsel on November 22, 2013, and December 22, 2014. After a hearing on April 19, 2018, the trial court denied the motion as amended on December 17, 2018. Appellant filed a timely notice of appeal on December 28, 2018; the case was docketed to the August 2019 term of this Court and thereafter submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. Appellant, his co-defendant Abdullahi Mohamed, and Johnson were all inmates at Telfair State Prison residing in the D-2 dormitory and were involved in a fight that led to Johnson's death. The jury heard testimony from several witnesses that Johnson had a cell phone and that the fight began when Mohamed attempted to take the cell phone from Johnson. Witnesses testified that Johnson was in his cell when Mohamed entered with a knife, tried to rob Johnson of the cell phone, and then started a fight with Johnson that carried out into the cell block's common area. Witnesses observed stab wounds on Johnson's chest when he exited his cell. The fight moved into the common area, where Appellant and multiple other inmates became involved as Johnson used a broomstick to fight back. Johnson was punched and stabbed again while in the common area. Two inmate witnesses testified that Appellant had a knife, that he participated in the fight with Johnson outside the cell, and that he stabbed Johnson. Johnson suffered superficial stab wounds to his shoulder and chest and a third

2

stab wound to the chest that was fatal.

1. Appellant first contends that the evidence adduced at trial was insufficient to support his conviction and that the trial court erred in denying his motion for directed verdict. We apply the same standard to both claims: "whether the evidence presented at trial, when viewed in the light most favorable to the verdict[ ], was sufficient to authorize a rational jury to find the appellant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Virger v. State*, 305 Ga. 281, 286 (2) (824 SE2d 346) (2019).

Two eyewitnesses testified to seeing Appellant fighting with Johnson after the melee spilled into the dormitory's common area, and both eyewitnesses testified that Appellant was wielding a knife, which he used to stab Johnson. Though Appellant argues that this testimony was inconsistent in certain respects, this Court "does not reweigh evidence or resolve conflicts in testimony." (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736, 736 (1) (832 SE2d 354) (2019). "[I]t was for the jury to determine the credibility of any witnesses and to resolve any conflicts or inconsistencies in the

3

evidence." (Citation and punctuation omitted.) *Worthen v. State*, 306 Ga. 600, 603 (1) (b) (832 SE2d 335) (2019). Likewise, it is of no consequence that the State did not adduce physical evidence — such as DNA evidence or fingerprints — connecting Appellant to the crime. See *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017) ("Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence, [such as DNA evidence or a confession].").[2]

---

[2] Appellant also argues that the State failed to show that he acted with malice because there was no evidence that he planned the attack with his co-defendants. However, "[t]he malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing." *Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322) (2019) (sufficient evidence to demonstrate malice where testimony showed that appellant "physically assaulted the victim, held him at gunpoint, shot him as he tried to run away, and left him at the residence after shooting him"). See also *Dupree v. State*, 303 Ga. 885 (1) (815 SE2d 899) (2018) (sufficient evidence to support conviction for malice murder where defendant physically assaulted victim and left her to die). The evidence recounted above was sufficient to permit the jury to conclude that Appellant acted with malice.

Appellant's claims that the evidence failed to show that he inflicted the fatal wound and that the evidence was insufficient to demonstrate that he acted as a party to the crime are similarly unavailing. We previously rejected nearly identical arguments in *Mohamed*. See *Mohamed*, 307 Ga. at 90-91 (1). As with Appellant's co-defendant, the fact that two eyewitnesses observed Appellant fight with and stab Johnson is sufficient to support the jury's conclusion that Appellant "shared an intent to murder the victim, regardless of whether he inflicted the fatal wound." Id. (citing *Jackson v. State*, 303 Ga.

4

The evidence recounted above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crime of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Accordingly, the trial court did not err in denying Appellant's motion for a directed verdict of acquittal. See *Virger*, 305 Ga. at 288 (2).

2. Appellant next argues that he was denied the effective assistance of counsel in multiple respects. To prevail on these claims, Appellant must show both that his trial counsel's performance was professionally deficient and that he was prejudiced as a result of that performance. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). If Appellant fails to make one of these showings, this Court is not required to consider the other. See

487, 489 (1) (813 SE2d 372) (2018) ("Even where it is undisputed that the victim was [fatally wounded] by another person, every person concerned in the commission of the crime may be convicted of the crime.")).

Finally, Appellant's characterization of the evidence against him as circumstantial and his argument that the State failed to exclude "every other reasonable hypothesis save that of the guilt of the accused," OCGA § 24-14-6, misapprehends the definition of circumstantial evidence and thus lacks merit. Eyewitness testimony based on the witness's firsthand observations of the crime is direct, not circumstantial, evidence. See *Harper v. State*, 298 Ga. 158, 160-161 (780 SE2d 308) (2015).

*Grant v. State*, 305 Ga. 170, 175 (5) (824 SE2d 255) (2019).

(a) Appellant first asserts that defense counsel was unprepared in three respects, but we agree with the trial court that this claim has no merit.

First, Appellant complains that trial counsel met with him only three to five times before trial, but "there exists no magic amount of time which counsel must spend in actual conference with his client." (Citation and punctuation omitted.) *Rice v. State*, 301 Ga. 746, 748 (2) (804 SE2d 5) (2017). Next, Appellant takes issue with trial counsel's failure to file more than one pretrial motion. "Whether to file pretrial motions and how to argue them are strategic decisions, and when reasonable in the context of the case, do not constitute error." (Citation and punctuation omitted.) *Jackson v. State*, 306 Ga. 706, 714 (4) (a) (832 SE2d 809) (2019). Appellant has not identified what other motions trial counsel should have filed, nor has he articulated how trial counsel's failure to file additional motions was unreasonable. And "deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to

have performed." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019).

Finally, while Appellant suggests that trial counsel should have engaged an investigator to interview potential witnesses, he offers no evidence in support of this claim other than generally asserting that these interviews could have led to exculpatory evidence. Unfounded speculation about what additional investigation might have uncovered or about what unnamed witnesses may have testified cannot support a claim that trial counsel was professionally deficient, nor can it establish prejudice. See *Bozzie v. State*, 302 Ga. 704, 711-712 (4) (d) (808 SE2d 671) (2017) ("[S]peculation about what the witnesses might have said on cross-examination is insufficient to establish prejudice."); *Lanier v. State*, 288 Ga. 109, 111 (3) (a) (702 SE2d 141) (2010) (no deficient performance in failing to hire an independent expert where appellant speculated that the State's DNA evidence was defective but failed to produce expert testimony supporting his claim).

(b) Appellant next argues that trial counsel was ineffective in

failing to object to the State's eliciting testimony regarding gangs and gang activity at Telfair State Prison, testimony which Appellant alleges amounts to nothing more than improper and irrelevant character evidence. We considered this "concerning" testimony in the appeal of Appellant's co-defendant Mohamed:

> During the presentation of its case-in-chief, the State questioned three witnesses about the presence of gangs in Telfair State Prison. First, the State asked Officer Ben Northcutt, a corrections officer at the prison, whether he was aware of any "gangs or groups or affiliations of different inmates" at the prison around the time of the crime. After Northcutt testified generally about the prison's "gang problem," the State asked him how to determine whether an inmate was a member of "a group or affiliation." At that point, co-defendant Gipson objected on grounds of relevance, which the trial court overruled. Northcutt then testified regarding clothing and tattoos inmates might display and noises they might make to indicate their affiliation with other inmates. As to specific groups present at the prison, Northcutt identified "the Muslim guys" and "the Christian guys." The State next questioned inmate Thomas Echols about his observations of "groups or affiliations or gangs" in the prison, and Echols identified street gangs, like the Bloods and the Crips, as well as religious groups. Finally, inmate Rashard Styles testified that "a lot of gangs" were present in the prison. When Styles mentioned the Bloods and Crips, the State pressed him further, asking about other groups of people. Styles then specifically mentioned "the Muslims." These three witnesses offered no explanation as to how

8

membership in a religious group might relate to gang activity.[3]

*Mohamed v. State*, 307 Ga. 89, 92 (2) (b) (834 SE2d 762) (2019).

Assuming that trial counsel was deficient in failing to object to this testimony, we nevertheless conclude — as we did in *Mohamed* — that Appellant is not entitled to relief on this ground because he cannot demonstrate prejudice. As we noted in *Mohamed*, there was, at best, a tenuous connection between the problematic testimony and the co-defendants; Appellant's counsel noted as much during closing argument and emphasized the State's failure to connect the evidence to Appellant or to the crime. Moreover,

> there was no evidence showing either that the crime was gang-related or that the defendants were motivated to participate in the crime by virtue of shared group membership. The prosecution made no reference to such a theory either in its opening statement or closing argument.

Id. Accordingly, Appellant has failed to show that his trial counsel

---

[3] "During the presentation of co-defendant Gipson's defense, Gipson acknowledged, on cross-examination, that he, Mohamed, and [Appellant] were adherents of the Muslim faith and attended the same worship services at the prison. The record also shows that Mohamed wore a kufi during the trial." *Mohamed*, 307 Ga. at 92 (2) (b) n.4. No evidence was presented regarding Johnson's religious affiliation.

was constitutionally ineffective in this regard.

(c) Appellant's third claim of ineffective assistance concerns his trial counsel's failure to object to testimony by State's witness Courtney Hughes. Hughes, an inmate who was incarcerated in the D-2 dorm when the crime occurred, repeatedly asserted on direct examination that he did not recall what transpired, apparently in contradiction to what he told GBI investigators. The State then began asking Hughes leading questions regarding his statement to investigators; Appellant asserts that counsel should have objected to this line of questioning, on the ground that the evidence constituted improper impeachment evidence.

At the hearing on Appellant's motion for new trial, trial counsel was unable to shed light on why he did not object to this testimony other than noting that he reserves objections for situations where there is "a significant reason" to object. In any event, "it is the conduct of the lawyer, not his thinking, that we assess for reasonableness, even though the thinking of the lawyer may inform the reasonableness of his conduct." (Emphasis omitted.) *Powell v. State*,

291 Ga. 743, 748 (2) (b) n.2 (733 SE2d 294) (2012). Trial counsel's conduct here was reasonable.

The record does not reflect that any part of Hughes's statement concerned Appellant. Indeed, the only assailant mentioned during Hughes's direct examination was co-defendant Mohamed. Under these circumstances, trial counsel could have reasonably chosen not to object to avoid drawing attention to Hughes's testimony. See *Sears v. State*, 292 Ga. 64, 70 (5) (b) (734 SE2d 345) (2012) ("[A] reasonable lawyer might have worried that objecting would only draw attention to the testimony."). See also *Anthony v. State*, 303 Ga. 399, 410 (9) (811 SE2d 399) (2018) (failure to object to evidence not prejudicial to defendant cannot support finding of ineffective assistance).

(d) Appellant also claims that trial counsel was ineffective by failing to object to certain portions of the State's closing argument. Specifically, Appellant contends that the State argued facts not in evidence when it commented that the motive for stabbing Johnson

was to steal his cell phone.[4]

"A prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion. Within that wide latitude, a prosecutor may comment upon and draw deductions from the evidence presented to the jury." (Citations and punctuation omitted.) *Booth v. State*, 301 Ga. 678, 688 (4) (804 SE2d 104) (2017). Here, the prosecutor's argument was "based on permissible inferences and legitimately supported by the facts in evidence." (Citation and punctuation omitted.) *Faust v. State*, 302 Ga. 211, 220 (4) (c) (805 SE2d 826) (2017). Both eyewitnesses testified that they believed the fight began when Mohamed attempted to take Johnson's cell phone, and a nurse testified to finding a cell phone in Johnson's pocket when he was admitted to the prison infirmary for treatment after he was attacked by Appellant and Mohamed. Because the comments of which Appellant complains were within the prosecutor's "wide latitude," counsel was not deficient by failing to

---

[4] Appellant also contends, unsupported by citation to the record, that the State improperly argued that the co-defendants acted in concert as part of a "Muslim gang." Our review of the record uncovers no such argument.

12

object. See id. at 219 (4) (c).

(e) Appellant next argues that trial counsel should have objected, during the testimony of Officer Jerry Jones, to the State's failure to demonstrate chain of custody before admitting certain physical evidence, including several shanks and a gray sweatshirt that crime scene investigators recovered from the crime scene in the dormitory's common area.[5] These items were collected by both Officer Jones and another officer, and then sent to the GBI for additional testing. Appellant urges that, because the State did not present the testimony of every person who was in control of the evidence, trial counsel should have objected to the admission of the evidence.

Our review of the record, however, shows that counsel's decision not to object was strategic. "A defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." (Citation and punctuation omitted.) *Sullivan v. State*, 301 Ga. 37,

---

[5] Testimony at trial indicated that Johnson's blood was found on two of the shanks, but investigators were unable to make any conclusive determination as to the donors of DNA recovered from the other items.

13

40 (2) (a) (799 SE2d 163) (2017). Appellant has not made such a showing here.

Counsel testified at the motion for new trial hearing that he objects when there is a "significant reason" to object and that the case "really turned on the identification" of the assailants. The evidence was never connected to Appellant and did not link him to the crime. See *Anthony*, 303 Ga. at 410 (9). Indeed, during closing argument, trial counsel emphasized that the State had in fact failed to produce any physical evidence tying Appellant to the crime, while also questioning the veracity of the eyewitnesses who accused Appellant of the crime. Appellant has not established that his trial counsel was deficient in pursuing this strategy, and this claim fails.

(f) Appellant's final claim of ineffective assistance relates to trial counsel's failure to investigate and present an alibi defense — namely, that Appellant was asleep in his cell for the duration of the incident. Trial counsel testified at the motion for new trial hearing that he and Appellant discussed the possibility of pursuing an alibi defense and that Appellant "was going to supply [trial counsel] with

14

some names [of potential alibi witnesses], but never did." Trial counsel also noted that the defense "would not have been true . . . because [Appellant] was not, in fact, in his room." Appellant testified at the motion for new trial hearing that he was aware of the nicknames of the alibi witnesses but chose not to give them to trial counsel because, in Appellant's estimation, doing so would have been unhelpful. Under these circumstances, Appellant has failed to show that trial counsel was deficient in choosing not to pursue an alibi defense. See *Escobar v. State*, 279 Ga. 727, 730 (5) (620 SE2d 812) (2005) (trial counsel cannot be deemed ineffective for failing to locate alibi witness of whose existence counsel was unaware).

3. Appellant next argues that he was denied his Sixth Amendment right to communicate effectively with his trial counsel because prison guards were present during his meetings with counsel. This claim lacks merit.

Encompassed in the right to counsel established by the Sixth

15

Amendment to the United States Constitution[6] is the right to communicate with counsel. See *Geders v. United States*, 425 U. S. 80, 88-89 (96 SCt 1330, 47 LE2d 592) (1976) ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." (citation and punctuation omitted)). The Supreme Court of the United States has recognized that this right may be violated where the government intrudes upon or interferes with a defendant's ability to communicate with his counsel, thereby stifling counsel's ability to render effective assistance. See id. at 91. (holding that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment"). Compare *Weatherford v. Bursey*, 429 U. S. 545, 558 (97 SCt 837, 51 LE2d 30) (1977) (no Sixth Amendment violation where there was "no tainted evidence in [the] case, no communication of defense strategy

---

[6] "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."

to the prosecution, and no purposeful intrusion by [confidential informant who was present while defendant met with his attorney and discussed trial strategy]").

That being said,

> [t]he premise of [these] prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding[.]

*United States v. Morrison*, 449 U. S. 361, 365 (101 SCt 665, 66 LE2d 564) (1981).

Here, Appellant's claim fails because he has not demonstrated how he was prejudiced by this alleged violation. The trial court found that, beyond a generalized expression of discomfort with the guard's presence, Appellant failed to articulate how the mere physical presence of a guard in the interview room constituted an intrusion upon or otherwise limited his access to confidential communication with his attorney. This finding is supported by the record. And though Appellant asserts on appeal that he was "precluded from

17

having an open conversation" with trial counsel, he has not alleged that the guard could overhear his conversation with counsel, has not explained *how* the guard's mere presence in the room limited his communications with counsel, and has not shown "prejudice of any kind, either transitory or permanent, to the ability of [his] counsel to provide adequate representation in these criminal proceedings." *Morrison*, 449 U. S. at 366.

4. Finally, Appellant asserts that the trial court abused its discretion in denying him a new trial based on his claim of newly discovered evidence. We disagree.

Appellant claims that he is entitled to a new trial because, in the time since his trial, he has become aware of two alibi witnesses who have executed sworn affidavits concerning Appellant's whereabouts during the crime. Anthony Bostick, who was Appellant's cellmate at the time, alleges that Appellant was asleep in his cell immediately before the altercation and was awoken by the "commotion" taking place in the dorm's common area. According to Bostick, he and Appellant observed the fight through the window in

their cell door and did not leave the cell before, during, or after the incident. The second witness, Chaz Stringer, claims that he stopped by Appellant's cell and found Appellant asleep. After leaving Appellant's cell, Stringer stopped immediately outside the cell to speak with someone, and seconds later, he heard a "wild commotion" downstairs. Before returning to his own cell, Stringer noted that Appellant's cell door remained closed.

To obtain a new trial on the basis of newly discovered evidence, a defendant must establish the following:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

*Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

In denying Appellant's motion for new trial on this ground, the trial court found that Appellant failed to satisfy the first and second prongs. The trial court noted that Appellant would have known,

19

before trial, at least of his cellmate's ability to confirm Appellant's location at the time of the incident and that consultation with his cellmate would have led to information regarding Stringer's presence in the cell around the time of the incident. The trial court also noted, and the record reflects, that Appellant's own testimony at the motion for new trial hearing indicated that Appellant was aware of these witnesses before trial and that, had he exercised due diligence, the presence of these witnesses could have been secured for trial. Under these circumstances, the trial court did not abuse its discretion in denying Appellant's motion for new trial on this ground. See *Davis v. State*, 283 Ga. 438, 446 (3) (D) (660 SE2d 354) (2008) (no abuse of discretion in finding that appellant failed to satisfy *Timberlake* standard where witness with purportedly new evidence was "readily identifiable" before appellant's trial).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 10, 2020.

Murder. Telfair Superior Court. Before Judge Kaufold.

*Randall P. Sharp*, for appellant.

*Timothy G. Vaughn, District Attorney, Keely K. Pitts, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.