NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 3, 2026

S25A1302. TAYLOR v. THE STATE.

ELLINGTON, Justice.

Shauntae Laquana Taylor appeals following her convictions for malice murder and other charges in connection with the shooting death of Miguel Munoz.[1] As her sole enumeration of error on appeal,

---

[1] Munoz was killed in the early morning hours of September 4, 2019. A DeKalb County grand jury indicted Taylor, along with Jessica Smith, in connection with Munoz's death on December 12, 2019, charging them with malice murder (Count 1), felony murder (Count 2), two counts of aggravated assault (Counts 3 and 4), and possession of a firearm during the commission of a felony (Count 5). Taylor and Smith's cases were severed for trial, and Smith, with no formal agreement with the State, testified for the State at Taylor's trial. Following a trial, a jury found Taylor guilty on all counts on March 28, 2022, and the trial court sentenced her to life with the possibility of parole on Count 1; 20 years to serve in prison on Count 4, to run consecutively to Count 1; and five years to serve on Count 5, to run consecutively to Count 4. Count 2 was vacated, and Count 3 was merged into Count 1. Taylor filed a timely motion for new trial on April 19, 2022, which was amended by new counsel on July 1, 2024. The trial court denied Taylor's motion for new trial on September 4, 2024. Taylor then filed, and later amended, a timely notice of appeal to the Georgia Court of Appeals, which transferred the case to this Court on May 15, 2025. The case then was docketed in this Court to the August 2025 term and submitted for a decision on the briefs.

Taylor contends she received ineffective assistance of counsel "when trial counsel failed to effectively delve into the potential theory that codefendant Jessica Smith may have been at least the decision maker for the shooting, and possibly even the shooter." However, for the reasons discussed below, we conclude that Taylor failed to carry her burden to establish this claim under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Smith testified at Taylor's trial that, sometime in August or September 2019, she began "prostituting" for Taylor. She said that Taylor set up a web page for Smith on an internet prostitution site, which she used to arrange for clients to come to the hotel where Smith and Taylor were staying. Smith would have sex with the clients and then turn all the money she received over to Taylor. In turn, Taylor provided Smith with food and lodging but did not give Smith any money.

In the early morning hours of September 4, 2019, Taylor arranged for Smith to meet a client at another hotel. Taylor drove Smith to a hotel in Brookhaven where Munoz was staying, with the

intention that Smith would have sex with Munoz for money. After Smith and Taylor were admitted to the hotel by the front desk clerk, they took the elevator to the third floor where Munoz was staying. Only Smith entered Munoz's hotel room at that time, and the plan was for Taylor to remain outside in the hallway. Smith testified that, after she entered the room, Munoz sat on the edge of the bed and used drugs. But Smith said that the two never engaged in any sexual acts because, at some point, she became uncomfortable and told Munoz that she was not "going to do anything with him."

When Smith texted Taylor to tell her "[what was] going on," Taylor replied that Munoz still needed to pay Smith for her time. However, Munoz refused to pay because no sexual acts had occurred. Smith relayed Munoz's response to Taylor by text, and Taylor instructed Smith to open the hotel room door, which Smith did. Taylor then entered the room and told Munoz that he needed to pay. When Munoz refused, Taylor drew a gun from behind her back and began striking Munoz on the head with it. Smith testified that she fled the room after Taylor hit Munoz three times. Smith said she ran

3

downstairs and went outside the hotel "to the bushes," where she waited for about ten minutes until Taylor called and instructed Smith to meet at the car. Smith described Taylor as "frantic" when they arrived at the car, and the two then left and returned to their own hotel.

Hotel employees discovered Munoz's dead body in his room later that morning , and a subsequent autopsy revealed that Munoz had four blunt-force head injuries and a penetrating gunshot wound to the chest, which resulted in his death. Fragments of a 9mm hollow-point "rapidly invasive projectile" (RIP) were removed from Munoz's body, and a 9mm shell casing was found in his hotel room. After Taylor was later arrested in connection with Munoz's death, investigators discovered an unfired 9mm hollow-point RIP round in the hotel room where she was staying. Although police never located the gun used in the shooting, subsequent testing revealed that the shell casing retrieved from Munoz's hotel room and the unfired round located in Taylor's hotel room had both been inside "the same exact firearm," a High Point 9mm pistol, at some point in time.

Following her convictions, Taylor moved for a new trial on several grounds. After Taylor chose to waive any evidentiary hearing on the motion, instead submitting the motion for decision on the parties' briefs, the trial court denied Taylor's motion, finding that she failed to carry her burden to establish her claim of ineffectiveness of counsel.

Taylor now raises the same claim of ineffective assistance of trial counsel on appeal. To establish a claim of ineffective assistance of counsel, a defendant must show both that her counsel performed deficiently and that she was prejudiced by the deficient performance. See *Coston v. State*, 321 Ga. 760, 766 (2025) (citing *Strickland*, 466 U.S. at 687). Proof of deficiency under the first prong of this test requires a defendant to demonstrate that her trial attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Taylor v. State*, 315 Ga. 630, 647 (2023) (quotation marks omitted). Demonstrating prejudice under the second prong requires the defendant to show a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Palmer v. State*, 310 Ga. 668, 678 (2021) (quotation marks omitted). Showing that counsel's deficient performance had "some conceivable effect on the outcome of the proceeding" is not enough; the defendant must instead establish "a probability sufficient to undermine confidence in the outcome." *Bentley v. State*, 307 Ga. 1, 4 (2019) (quotation marks omitted) (quoting *Strickland*, 466 U.S. at 693-94). Demonstrating ineffective assistance of counsel presents a "high bar," and if a defendant fails to establish either the deficiency or the prejudice prong, we are not required to consider the other. *Mohamed v. State*, 307 Ga. 89, 93 (2019).

As noted above, Taylor argues that she is entitled to a new trial because her trial counsel failed to "effectively delve" into the possibility that Smith was the "decision maker" or the shooter in this case. In support of this argument, Taylor asserts that the State's objection to her trial counsel's "appropriate question on cross-examination allowed the prosecution to structure state witness

Jessica Smith's answers in a way favorable to the state's prosecution of Taylor." But Taylor fails to provide any record citation to either the State's objection or to her counsel's allegedly "appropriate" question.[2] She also notes "[s]pecifically," but without record citation, that Smith "was permitted to confess to drug use in her testimony, yet no attempt was made to impeach her credibility when she testified against … Taylor, as per [OCGA §] 24-6-609." Taylor further contends that Georgia Department of Corrections records show that Smith had two prior felony drug convictions in 2012,

---

[2] Taylor's Appellant's brief provides two legal citations, to the *Strickland* case, setting out the requirements for establishing her claim of ineffective assistance of counsel, and to OCGA § 24-6-609, addressing impeachment of a witness through evidence of a prior criminal conviction. And although Taylor purports to provide five record citations, with one exception, those citations are illusory in that they either (1) do not correspond to accurate volume or page numbers in the record or (2) fail to provide record support for the facts asserted in the brief. Instead, such citations point to portions of the trial transcript that do not relate to or support Taylor's factual assertions or argument, including, in one instance, to a page containing the court reporter's certification of the transcript. The one accurate and locatable record citation is to a quoted portion of the trial court's final charge to the jury, which does not reflect any action or inaction alleged to constitute deficient performance on the part of her trial counsel. The inaccurate and irrelevant nature of her record citations means that they provide no support for her claim of ineffective assistance of counsel. This level of briefing and representation by counsel on appeal thus results in a disservice to her client and falls well below the standard that this Court expects from the counsel who practice before it.

which her counsel failed to introduce, but Taylor failed to attach any proof of those prior convictions to her motion for new trial below, and because there was no evidentiary hearing on the motion, no other evidence of the alleged convictions exists in the record.

Accordingly, we conclude that Taylor has failed to demonstrate that her trial counsel's performance was deficient because she has neither pointed us to any specific action taken by her counsel at trial that she claims was deficient nor identified any instance where her counsel failed to act when action reasonably was required under prevailing professional norms. See *Sauder v. State*, 318 Ga. 791, 816 n. 21 (2024) ("To the extent [appellant] has not identified specific instances of [his counsel's] alleged deficiencies, he has not carried his burden of showing that his lawyer performed deficiently."); *Ward v. State*, 313 Ga. 265, 275 (2022) (holding that appellant failed to demonstrate ineffectiveness of trial counsel because he did "not identify any specific instances to support [his] broad allegations"). See also *Taylor*, 315 Ga. at 650 ("It is not the function of this Court to cull the record for a party to find alleged errors or to form

arguments on the appellant's behalf." (quotation marks omitted)).

Because Taylor failed to carry her burden to show deficient performance by her trial counsel, we need not address the prejudice prong of the *Strickland* test. See *Mohamed*, 307 Ga. at 93.

*Judgment affirmed. All the Justices concur.*